UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA             :

    -against-                                          :      21 CR 446 (VSB)
                                                                     AFFIDAVIT OF
ANDREW FRANZONE                      :      ANDREW FRANZONE

                                                                       :
-------------------------------------------------------------X

STATE OF NEW YORK    )
                             ) ss.:
COUNTY OF NEW YORK )

        ANDREW FRANZONE, being duly sworn and under penalties of perjury, deposes and says as follows:

1. I am the Defendant, ANDREW FRANZONE.

2. At the time of my arrest on April 22, 2021, I was a guest of the Westin Beach Resort & Spa (the "Westin"). I had been staying at Room 1147 of the Westin, for approximately one year. Though the Westin would periodically put down that I had departed and then checked in again. This enabled me to use the rewards points that I had earned towards free nights (and occurred regardless of whether my balance at the Westin was positive, negative, or zero).

3. I was not scheduled to check out of the Westin the day of my arrest, whether for non-payment or otherwise. During the time that I was residing at the Westin, an employee, Robert Munn, would periodically contact me to remind me to pay my balance when my hotel bill was starting to reach a certain point. I would then either make a payment or ask my mother, Margaret McGuirk, to make a payment on my behalf. This was the

1

arrangement that the Westin and I had followed since I had checked into the hotel in or about April of 2020.

4. Had it not been for my arrest (or had I been released on bail prior to the Westin checking me out of the hotel without my request), I would have continued residing at Room 1147 of the Westin. I never asked the Westin to check me out of the hotel. When I left my hotel room on April 22, 2021, I did not expect to be checked out for failure to pay. I was expecting to return to my hotel room later in the day, as I had on any other day for a year. On the day of my arrest, I had left my passport and my wallet in my hotel room, with my other belongings. I had not packed, but nor had I left things out haphazardly. My clothes and other possessions were neatly arranged in the room.

5. Another hotel, the W, is one to two blocks away from the Westin. The two hotels are separated by one cross street, Bayshore Drive.

6. The W is located on a road by the beach in Fort Lauderdale. It has outdoor tables, countertops and other furniture outdoors on the W's property. A photograph from the Marriott's website depicting "El Vez" on the W's premises is attached.

7. At the time that I was staying at the Westin, most venues were shut down due to the COVID-19 pandemic. Therefore, the W's bars along the beach were among the few places that were still open.

8. During the year that I stayed at the Westin, I had a tab open at the W, where I would often go, whether to go the beach, work, relax, eat or drink.

9. When I went to the W, I would bring my silver Apple MacBook Pro laptop ("Device-1") and my space gray Apple iPhone 11 Pro Max ("Device-2") with me.

10. When I would get up, for example, to pace, or go for a walk, or to sit down somewhere else, I would sometimes leave Device-1 and/or Device-2 on top of one of the W's tables, countertops, or other furniture until I returned. I would make an effort to keep the devices within my line of sight.

11. That said, when the devices were not in use, there was nothing from the *exterior* of Device-1 or Device-2 that would indicate to someone else that those devices belonged to me. There were no identifying markings on either device.

12. On April 22, 2021, I left my room at approximately between 11 a.m. and 12 noon. I left the do not disturb sign hanging outside my hotel room for privacy so that the staff of the Westin would not enter. That afternoon, I spent approximately three to four hours at the W, making phone calls on Device-2 and working from my computer (Device-1), and moving between the W's outdoor tables and seating areas. At some point, I set my cell phone (Device-2) and my computer (Device-1) down on top of a surface, and went to try to clear my head. The area where I had left my cell phone and my computer was not crowded, but there were other customers there.

13. On the day of my arrest, I went to go sit at one of the W's outdoor seating areas some yards away from where I had left Device-1 and Device-2 sitting. (At the W, I would sometimes walk more than 20 or even more than 50 feet away from my electronics while trying to clear my head, trusting that no one would steal my property.)

14. While I was sitting at this seating area at the W, four federal agents came over to me, and told me that I was under arrest and I was taken into federal custody. After the agents put me in handcuffs and confirmed that I was unarmed, two of the agents escorted me to an unmarked car. This occurred sometime in the late afternoon on April 22, 2021.

15. Both the iPhone and the laptop are very important to me. My iPhone (Device-2) had all of my contacts stored on it, including but not limited to telephone numbers for my lawyers, which I did not have memorized.

16. At the time of my arrest, I was involved in various ongoing civil litigations, including but not limited to *Dennis S. Hersch v. Andrew T. Franzone*, 20 CV 09047 (ER) (S.D.N.Y.) ("*Hersch v. Franzone*"), and *Dennis S. Hersch et al. v. Franzone et al.*, No. 2020-1032-SG in the Court of Chancery in the State of Delaware. As the co-proponent of a then-pending reorganization plan that stakeholders had already voted to approve, I was also preparing for the plan's confirmation hearing that had been scheduled by the U.S. Bankruptcy Court for the Southern District of Florida. All of my notes on how I wanted to proceed in the litigations, on my strategy to prepare for the confirmation hearing and on my thoughts on what would help, e.g. the motion to dismiss that my lawyers were working on in *Hersch v. Franzone*, were stored on Device-1 and Device-2.

17. After I was in custody, one of the agents seized Device-1 and Device-2 from the W the day of my arrest.

18. I also learned later that the rest of my belongings (including but not limited to my clothes, four other electronic devices, etc.), had been placed into bags and removed from my room at the Westin, and had been seized by the U.S. Postal Inspection Service (U.S.P.I.S.) from the Westin.

19. The four electronic devices seized from the Westin were my Apple iPhone ("Device-3"), my 4 terabyte G Drive Hard drive "Device-4"), my 2 terabyte G Drive Hard drive ("Device-5") and my Apple MacBook Air laptop ("Device-6"). At the time that I had left my hotel room on April 22, 2021, Device-3; Device-4, Device-5 and Device-6 were

inside my hotel room. I had put them away neatly, out of sight, before leaving the Westin for the day.

20. The two devices seized from the W and two devices seized from the Westin were password-protected. However, my 4 terabyte hard drive ("Device-4") and my 2 terabyte hard drive ("Device-5") would not have been password-protected, and I had my passwords to the other electronic devices saved on one of these non-password protected hard drives.

21. I felt traumatized by my arrest and by my subsequent time incarcerated in harsh conditions, which included COVID-19 related lockdowns, sometimes for 24 hours a day. I was initially held at different county jails in Florida, before being transferred to F.D.C. Miami and, ultimately, to the Metropolitan Detention Center ("M.D.C."), where I remained until my release on bail in November of 2021. At some points, communication with the outside world, including with my lawyers, was close to impossible.

22. I retained the firm of Rubinstein & Corozzo, LLP to represent me on or about December 20, 2021.

23. On January 12, 2022, through counsel, I requested the Government return my personal property, and provide an inventory of what had been seized. (This also included a specific demand for my driver's license since, to the best of my knowledge, all photo ID in my possession had been seized by U.S.P.I.S.) The Government agreed to return my wallet.

24. Upon information and belief, other than the property that was turned over to my counsel in January of 2022 (i.e. my wallet), all of the rest of the property that I had had on the day of my arrest (including both at the Westin and at the W), remains in the custody of the U.S.P.I.S. to this day.

25. I have asked my counsel when I can get the rest of my belongings back from U.S.P.I.S. It is my understanding that the Government is unlikely to agree to release all of my property until after they no longer have a use for it (whether because the case is over or because they are not allowed to introduce the property into evidence).

_____
ANDREW FRANZONE

Sworn and subscribed to before me this 24th day of June, 2022:

_____
Notary Public

ANGELA DANIELLE LIPSMAN
Notary Public, State of New York
Registration #02LI6287740
Qualified In New York County
Commission Expires 08/19/2025