UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

UNITED STATES OF AMERICA                    :

   -v.-                                           :          21 Cr. 446 (VSB)

ANDREW FRANZONE,                            :

                 Defendant.          :

-----------------------------------------------------------------x


# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
# IN OPPOSITION TO DEFENDANT'S PRETRIAL MOTIONS


DAMIAN WILLIAMS
United States Attorney
Southern District of New York
Attorney for the United States of America

Kiersten A. Fletcher
Alex Rossmiller
Assistant United States Attorneys
- Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 2

A. Factual Overview ........................................................................................................ 2

B. Investigation Overview, the Complaint, and the Warrants ........................................ 4

C. The Indictment and the Motions ................................................................................. 6

ARGUMENT ........................................................................................................................ 7

I. The Seizure of the Arrest Devices Was Properly Made Incident to Arrest and Pursuant to the Plain View Doctrine, Their Incriminating Nature Was Readily Apparent, and There Was No Unreasonable Delay Prior to Obtaining a Warrant for Their Search ...................................... 7

A. Applicable Law ....................................................................................................... 7

B. Discussion ............................................................................................................... 9

II. The Searches of the Westin Devices Were Lawfully Undertaken Pursuant to the Second Warrant, Following a Valid Seizure Supported by Probable Cause and Which was Not Overbroad ................................................................................................................... 14

A. Applicable Law ..................................................................................................... 15

B. Discussion ............................................................................................................. 17

III. The Allegations of Misconduct Are Utterly Baseless and There Is No Good Cause For A *Franks* Hearing ......................................................................................................... 22

A. Applicable Law ..................................................................................................... 22

B. Discussion ............................................................................................................. 25

i. The Defendant Fails to Identify Any Material Inaccuracies of Omissions ................. 25

ii. The Defendant's Motion Fails to Make the Required Showing of Intentional or Reckless Omission and No Hearing is Warranted ................................................................. 27

CONCLUSION .................................................................................................................. 28

# TABLE OF AUTHORITIES

## CASES

*Abel v. United States*, 362 U.S. 217 (1960) .............................................................. 18

*Arizona v. Gant*, 556 U.S. 332 (2009) .................................................................... 7

*California v. Greenwood*, 486 U.S. 35 (1988) ......................................................... 15

*Chimel v. California*, 395 U.S. 752 (1969) ..................................................... 7, 8, 10

*Franks v. Delaware*, 438 U.S. 154 (1978) ......................................................... *passim*

*Herring v. United States*, 555 U.S. 135 (2009) ...................................................... 17

*Illinois v. Gates*, 462 U.S. 213 (1983) ............................................................. 16, 24

*Jones v. United States*, 362 U.S. 257 (1960) ...................................................... 16, 24

*Katz v. United States,* 389 U.S. 347 (1967) ........................................................... 15

*Kentucky v. King*, 563 U.S. 452 (2011) ................................................................... 8

*Koch v. Town of Brattleboro, Vermont*, 287 F.3d 162 (2d Cir. 2002) .................. 16, 19

*Ornelas v. United States*, 517 U.S. 690 (1996) ........................................................ 16

*Rakas v. Illinois*, 439 U.S. 128 (1978) ................................................................. 15

*Rivera v. United States*, 928 F.2d 592 (2d Cir. 1991) ............................................... 24

*United States v. Abiodun,* No. 04 CR. 1316 (DC), 2005 WL 3117305

    (S.D.N.Y. Nov. 22, 2005) .................................................................................. 15

*United States v. Akin*, 562 F.2d 459 (7th Cir.1977) .................................................. 18

*United States v. Awadallah*, 349 F.3d 42 (2d Cir. 2003) ................................. 23, 24, 27

*United States v. Bershchansky*, 788 F.3d 102 (2d Cir. 2015) ..................................... 17

*United States v. Boles*, 914 F.3d 95 (2d Cir. 2019) .................................................... 9

*United States v. Canfield*, 212 F.3d 713 (2d Cir. 2000) ........................................ 22, 23

*United States v. Chuang*, 897 F.2d 646 (2d Cir.1990) .................................................. 15

*United States v. Clark*, 638 F.3d 89 (2d Cir. 2011) ..................................................... 17

*United States v. Colkley,* 899 F.2d 297 (4th Cir.1990) ................................................ 23

*United States v. Corbett*, 20 Cr. 213 (KAM), 2012 WL 4480626, (E.D.N.Y. Sept. 30, 2021).... 13

*United States v. Cowan*, 396 F.2d 83 (2d Cir.1968) .................................................... 18

*United States v. Croft*, 429 F.2d 884 (10th Cir.1970) ................................................. 18

*United States v. Davis,* 967 F.2d 84 (2d Cir.1992) ................................................ 15, 19

*United States v. Echevarria*, 692 F. Supp. 2d 322 (S.D.N.Y. 2010) .............................. 8, 10

*United States v. Falso*, 544 F.3d 110 (2d Cir. 2008) .............................................. 25, 28

*United States v. Gagnon*, 373 F.3d 230 (2d Cir. 2004) ................................................ 17

*United States v. Gandia*, 424 F.3d 255 (2d Cir. 2005) ................................................ 10

*United States v. George*, 975 F.2d 72 (2d Cir. 1992) .................................................. 17

*United States v. Haddad*, 558 F.2d 968 (9th Cir.1977) ................................................ 18

*United States v. Keith*, No. 15 Cr. 827 (AJN), 2016 WL 1644370 (S.D.N.Y. Apr. 22, 2016)..... 25

*United States v. Klump*, 536 F.3d 113 (2d Cir. 2008) .................................................. 24

*United States v. Kowalczyk*, 08 Cr. 0095 (GMK), 2012 WL 3201975 (D. Or. Aug. 3, 2012) ..... 12

*United States v. Leon*, 468 U.S. 897 (1984) ............................................................. 17

*United States v. Lewis,* 386 F.3d 475 (2d Cir.2004) .................................................... 15

*United States v. Martin*, 426 F.3d 68 (2d Cir. 2005) .................................................. 23

*United States v. Melendez*, No. 16 Cr. 33 (LTS), 2016 WL 4098556 (S.D.N.Y. July 28, 2016)..25

*United States v. Parizo*, 514 F.2d 52 (2d Cir.1975) .................................................... 18

*United States v. Paulino*, 850 F.2d 93 (2d Cir.1988) .................................................. 15

*United States v. Perez*, 247 F.Supp.2d 459 (S.D.N.Y. 2003) ......................................... 23

*United States v. Rahme*, 813 F.2d 31 (2d Cir. 1987) .............................................. 15, 18

*United States v. Rajaratnam*, 719 F.3d 139 (2d Cir. 2013) ...................................................... 23, 27

*United States v. Rambo*, 789 F.2d 1289 (8th Cir.1986) ............................................................ 18

*United States v. Rocha-Gomez*, 412 F. Supp. 3d 369 (S.D.N.Y. 2019)...................................... 20

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998)............................................................... 16

*United States v. Smith*, 967 F.3d 198 (2d Cir. 2020) ............................................................ *passim*

*United States v. Ventresca*, 380 U.S. 102 (1965)............................................................... 16, 24

*United States v. Vilar*, No. S3 05 Cr. 621 (KMK), 2007 WL 1075041

    (S.D.N.Y. April 4, 2007)....................................................................................... 23

*United States v. Voustianiouk*, 685 F.3d 206 (2d Cir. 2012) ...................................................... 17

*United States v. Wagner*, 989 F.2d 69 (2d Cir. 1993) ............................................................... 16

*United States v. William Tisdol*, No. 20-cr-264 (JBA), 2021 WL 2349753

    (D. Conn. June 9, 2021)...................................................................................... 13

*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007).............................................................................. 16

*Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000) ........................................................................... 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

UNITED STATES OF AMERICA        :

  -v.-                            :      21 Cr. 446 (VSB)

ANDREW FRANZONE,         :

                 Defendant.     :

-----------------------------------------------------------------x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN
OPPOSITION TO DEFENDANT'S PRETRIAL MOTIONS**

The Government respectfully submits this memorandum of law in opposition to the motions of Andrew Franzone, the defendant, to suppress certain evidence and for the return of certain property.

**PRELIMINARY STATEMENT**

In a memorandum of law dated June 24, 2022 ("Motion" or "Def. Mem."), the defendant seeks an order from this Court suppressing all evidence seized pursuant to the execution of two search warrants (collectively, the "Warrants") that authorized the seizure and search of certain evidence including electronic devices. The defendant also requests that the Court order the return of his seized property. For the reasons stated herein, the Court should deny the Motion without a hearing.

Two of the six devices were seized incident to the defendant's arrest, and the remaining four were recovered from hotel personnel who had stored them in a location in which the defendant did not have a privacy interest. The searches of the defendant's electronic devices were conducted pursuant to judicially-authorized warrants that complied with the Fourth Amendment and Federal Rule of Criminal Procedure 41 in all respects. Indeed, for four of the six devices at issue, *two*

1

judicially-authorized warrants were issued, including, in the second warrant application, a description of the circumstances of the initial seizure of the devices.

The defendant's cursory argument for a *Franks* hearing is similarly baseless; he fails to offer a shred of evidence that the warrants' affiant made deliberate misstatements, or that any misstatements were made with reckless disregard for the truth. Instead, as described below, the affiant acted in good faith and included facts that were reasonably believed to be pertinent to a finding of probable cause. Moreover, even if the claimed errors had been the result of deliberate or reckless conduct—which they were not—they were wholly irrelevant to the findings of probable cause by two judges in two federal districts.

Accordingly, the Motions should be denied in its entirety without a hearing.

## BACKGROUND

### A.    Factual Overview

Over the course of several years, the defendant perpetrated a scheme to defraud investors in his purported investment fund. Between 2014 and 2019, the defendant served as the general partner for an investment fund, the FF Fund I (the "Fund"), which managed tens of millions of dollars for more than 100 investors. The defendant fraudulently induced existing and prospective investors to entrust him with their hard-earned savings by repeatedly lying about the composition of the Fund, its total assets, its liquidity profile, and its performance history. As part of his schemes, the defendant also misappropriated investor assets to fund his own personal business interests.

Specifically, when the Fund came under the defendant's sole control in 2014 following the departure of a prior partner, the defendant assured existing and prospective investors that the Fund would continue to employ the same investment strategy, including maintaining a highly liquid portfolio. The defendant represented that the Fund's strategy focused on preferred securities and

options—relatively liquid investments—and that private investments would account for no more than 20% of the Fund's allocation. During the relevant period, the defendant also told existing and prospective investors that the Fund had more than $70 million in assets under management.

In reality, all of those representations were false or misleading. Under the defendant's control, the Fund's assets were increasingly allocated to illiquid investments, securities and options became a much smaller proportion of the investments, and the defendant diverted massive amounts of Fund money to questionable and illiquid investments. For example, in January 2014, Fund assets maintained at securities brokerage firms accounted for approximately 74% of its portfolio, and less than 1% of assets were allocated to private investments. By the end of 2017, in contrast, Fund assets maintained at securities brokerage firms accounts for around just 5% of the portfolio, and approximately 80% was diverted to private, relatively illiquid investments. Those illiquid assets underperformed, and the defendant overstated the Fund's returns to prospective and current investors.

Additionally, the defendant siphoned Fund assets to use for his own personal and unauthorized expenditures. Among other things, the defendant spent more than $500,000 of Fund assets on an airplane hangar to use for his car racing team. When that fact became inconvenient for the defendant, in 2019, he asked certain investors to sign back-dated documents stating, falsely, that they were aware the Fund had purchased the airplane hangar and that it was a Fund asset. Understandably, the investors refused.

In 2019, following a series of redemption requests and questions from certain investors, the defendant's house of cards collapsed, and the Fund filed for bankruptcy and began liquidation proceedings.

### B. Investigation Overview, the Complaint, and the Warrants

In or about 2020, the United States Postal Inspection Service ("USPIS"), in conjunction with the United States Attorney's Office for the Southern District of New York (together, the "Government"), began an investigation of the defendant and others for possible fraud. As part of the investigation, Postal Inspectors with UPSIS reviewed materials including financial documents, bank records, public filings relating to the relevant bankruptcy proceedings, and documents and information collected by the United States Securities and Exchange Commission in connection with a parallel investigation of the defendant. Law enforcement also conducted interviews of witnesses and victims of the fraudulent schemes.

On April 20, 2021, Magistrate Judge James L. Cott signed a complaint charging the defendant with violations of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 (securities fraud), and Title 18, United States Code, Section 1343 (wire fraud) (the "Complaint"). Judge Cott also issued an arrest warrant in connection with the Complaint.

On April 22, 2021, law enforcement agents with USPIS arrested the defendant in Fort Lauderdale, Florida. At the time of the defendant's arrest, he had been staying at the Westin Beach Resort & Spa hotel (the "Westin"), and he was arrested outside of, and nearby to, the Westin. Two electronic devices, a cellphone and a laptop computer, referred to in the Motion as Device-1 and Device-2, respectively (collectively the "Arrest Devices"), were seized incident to the defendant's arrest.

At the time of the defendant's arrest, he owed the Westin approximately $2,200 in unpaid hotel bills for the time period between March 31, 2021 and April 22, 2021. (*See* Def. Mot. Ex. C).

On or about April 30, 2021, based on the above-described investigative steps and the information and charges set forth in the Complaint, USPIS obtained a warrant seeking evidence of

the charged offenses (*See* Def. Mot. Ex. I (the "First Warrant")). The First Warrant, which was sworn before Magistrate Judge Lurana S. Snow in the Southern District of Florida, authorized the search of a particular room at the Westin, as well as the seizure of evidence, fruits, and instrumentalities of the offenses as delineated in section 1(A) and (B) of Attachment B thereto, including paper documents, any computer devices, cellphones, and storage media that may contain any such electronically-stored information. The application for the First Warrant was supported by an affidavit sworn to by the case agent ("Inspector-1") (*See* Def. Mot. Ex. H (the "First Affidavit")). However, and as further described below, by the time the First Warrant was served on the Westin, Westin personnel had removed the defendant's possessions from his hotel room. Accordingly, and with the defendant's property no longer in a location in which the defendant had a privacy interest, on May 3, 2021, USPIS took custody of the defendant's electronic devices as well as certain financial documents with the consent of Westin personnel. (Devices 3-6, respectively, and collectively the "Westin Devices"). Notably, USPIS did not take possession of any of the defendant's personal property, including his clothing and toiletry items, that were left in the possession of Westin personnel.

USPIS then shipped the Westin Devices to New York, and they were received by Inspector-1 on or about Tuesday, May 11, 2021. The following Friday, on or about May 21, 2021, a second search warrant was obtained for evidence, fruits, and instrumentalities of the offenses based on the above-described investigative steps, the information and charges set forth in the Complaint, a description of the timeline and facts relating to obtaining the First Warrant, and the seizure of the Arrest Devices as well as the Westin Devices. (*See* Def. Mot. Ex. K (the "Second Warrant")). The devices subject to search, as described in particular in Section I of Attachment A to the Second Warrant, were the Arrest Devices and the Westin Devices. The Second Warrant was sworn before Magistrate Judge Robert W. Lehrburger, in the Southern District of New York,

the district within which the Arrest Devices and the Westin Devices were then located. The application for the Second Warrant was supported by an affidavit sworn to by Inspector-1. (*See* Def. Mot. Ex. J (the "Second Affidavit"). Notably, in addition to accurately describing the Arrest Devices as having been seized incident to arrest, the Agent Affidavit also described the sequence of events that resulted in the seizure of the Westin Devices. (*See* Second Affidavit ¶ 14).

### C. The Indictment and the Motions

On July 8, 2021, a grand jury sitting in this District returned an indictment charging the defendant with securities fraud and wire fraud in violation of 15 U.S.C. §§ 78j(b) & 78ff, and 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 1343.

On or about January 12, 2022, the defendant, through counsel, first requested the Government return the defendant's "personal property" as well as "an inventory of what was seized." (*See* Def. Mot. Ex. L).

On June 24, 2022, the defendant filed the Motion. The Motion argues that the Arrest Devices must be suppressed because, purportedly, (1) they were not obtained incident to the defendant's arrest, and assuming that is the case, (2) their incriminating nature was not immediately apparent and so they were not subject to the plain view exception. The Motion further argues that even had the Arrest Devices been lawfully seized, the evidence from those devices should be suppressed because (3) there was an unreasonable delay between the seizure and the application for the Second Warrant, and (4) the good faith exception does not apply because the law enforcement officers were on notice that an unreasonable delay could violate the defendant's Fourth Amendment rights. The defendant's motion also argues that the Westin Devices must be suppressed because, he claims, the First Warrant resulted in an overbroad initial seizure, lacked sufficient particularity, and was insufficiently supported by probable cause as to the location of the items to be searched. Finally, the Motion argues that the Second Warrant does not cure the

claimed prior deficiencies, and further argues that both warrants were obtained in violation of the doctrine of *Franks v. Delaware*.

## **ARGUMENT**

I.      **The Seizure of the Arrest Devices Was Properly Made Incident to Arrest and Pursuant to the Plain View Doctrine, Their Incriminating Nature Was Readily Apparent, and There Was No Unreasonable Delay Prior to Obtaining a Warrant for Their Search**

The defendant challenges the seizure and later search of the Arrest Devices, arguing the Arrest Devices were not properly seized incident to arrest, the incriminating value of the Arrest Devices was not readily apparent to validate a plain view seizure, and there was an unreasonable delay in obtaining a warrant to search them. Because the Arrest Devices were within the defendant's "grab area," they were properly seized incident to arrest, and their incriminating nature was readily apparent as later articulated in the First Affidavit. In addition, the delay in obtaining the Second Warrant to search the Arrest Devices was not unreasonable under the facts of this case, and in any event law enforcement acted in good faith.

### A.      **Applicable Law**

"Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.* "[P]olice may search incident to arrest only the space within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 335 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969). In particular:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. [. . .] And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. [. . .] There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that

phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

*Chimel*, 395 U.S. at 762-63.

Moreover, "law enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." *Kentucky v. King*, 563 U.S. 452, 463-63 (2011). Specifically:

> The "plain view" exception to the warrant requirement requires that: (1) the agents have lawful access to the place from which the item can be plainly viewed; (2) the objects seized are in plain view at the time they are discovered; and (3) it is 'immediately apparent' to law enforcement at the time of the discovery that the item constitutes evidence or fruit of a crime.

*United States v. Echevarria*, 692 F. Supp. 2d 322, 332 (S.D.N.Y. 2010). "For an item's criminal nature to be 'immediately apparent,' a reasonable agent must conclude that there is 'probable cause' to believe that the item constitutes evidence or fruit of a crime, without conducting some further search of the object." *Id.* (citations omitted).

Even where electronic devices are properly seized, the reasonableness of the seizure and eventual search of a device requires diligence in applying for a search warrant. *See United States v. Smith*, 967 F.3d 198, 202 (2d Cir. 2020). The reasonableness of a delay in seeking a warrant to search legally-seized property is judged based on four general relevant considerations, including (1) the length of delay, (2) the importance of the seized property to the defendant, (3) whether the defendant has a reduced property interest in the seized property, and (4) the justification for the delay. *Id.* at 202-03.

Additionally, even where a violation of the Fourth Amendment occurs, the suppression of evidence seized is not automatic. As the Second Circuit recently explained, "because the remedy exacts a heavy toll on the justice system, the exclusionary rule will apply only to deter deliberate, reckless, or grossly negligent conduct by law enforcement." *United States v. Boles*, 914 F.3d 95,

103 (2d Cir. 2019) (internal citation and quotation marks omitted). Accordingly, "[w]hen an officer genuinely believes that he has obtained a valid warrant . . . and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, 'and thus nothing to deter.'" *Id.* (quoting *Raymonda*, 780 F. 3d at 118).

For an officer to claim the "good faith exception," his/her reliance on a warrant must be objectively reasonable. Accordingly, the good faith exception does not protect an officer who relies on a judicially-authorized warrant "in at least four circumstances: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Boles*, 914 F.3d at 103 (quoting *Raymonda*, 780 F.3d at 118).

### B. Discussion

Here, the Arrest Devices were properly seized incident to the defendant's arrest. Even crediting the defendant's vague description of the location of the Arrest Devices when he was arrested, by *his own account* they were within his "grab area" and therefore appropriately seized incident to his arrest. On its face, the defendant's claim is that he placed the Arrest Devices on a surface where he was working and then stepped "some yards away." Def. Aff. ¶ 13.[1] The defendant's Motion similarly describes him as having been mere "yards away" from the devices. *See* Def. Mot. at 14.

---

[1] The defendant's general description of what he did *on other days* is entirely immaterial to his Motion. His assertion that he "would sometimes walk more than 20 or even more than 50 feet away" from his devices is untethered to his argument here and is not evidence of, or even a claim about, what he did the day of his arrest, when he says he was "some yards away." *See* Def. Aff. at ¶ 13. Even if it were relevant what the defendant did as a general matter, or on other days, he notes that he "would make an effort to keep the devices within [his] line of sight." *Id.* ¶ 10.

Crediting the defendant, and calculating a yard as three feet, that is approximately a single pace. The defendant is arguing, in effect, that he was "some" paces away from his devices. At most, and again crediting the defendant, the arresting officers would have seen him some paces away from his workstation, presumably with those items within his line of sight, *see* Def. Aff. ¶ 10, and with no other individual attending to the devices. Given the defendant's admitted proximity to the devices, and the officers' ability to quickly and correctly identify the devices as being the defendant's, his ability to gain possession of easily destructible evidence within "some" short steps places the Arrest Devices firmly within the category of evidence subject to seizure incident to arrest. *See United States v. Gandia*, 424 F.3d 255, 261 (2d Cir. 2005) (construing that phrase "grab area" to mean "the area from within which [the defendant] might gain possession of a weapon or destructible evidence") (quoting *Chimel*, 395 U.S. at 763).

Moreover, even if the search incident to arrest exception were not applicable, the Arrest Devices were lawfully seized pursuant to the plain view exception to the warrant requirement. Indeed, the defendant does not dispute the first two requirements under the doctrine—*i.e.*, that the officers were lawfully present and that the devices seized were in plain view. *See* Def. Mot. at 15. Given the defendant's proximity to the devices at the time of his arrest, it was reasonable for the officers to believe they belonged to him, and they had all the knowledge of the investigation and the case that they would set forth just days later, in support of the First Warrant, which was then authorized by a magistrate judge to seize and search precisely the kind of evidence the Arrest Devices constituted—specifically, "computer devices, cellphones, and storage media." *See* First Warrant, Attachment B at 1(B). "[T]he court is to consider whether probable cause exists from the perspective of a law enforcement officer." *Echevarria*, 692 F. Supp. 2d at 332. The law enforcement officers here plainly understood and knew there was probable cause to believe that the defendant's electronic devices would contain evidence of a crime.

Because this argument is correct, the defendant predicts it, and counters that if the investigators "actually" had such probable cause, they would have sought an eavesdropping warrant to intercept phone calls. *See* Def. Mem. at 15-16. This argument is meritless. Two separate search warrant applications set forth probable cause for why the defendant's electronic devices were likely to contain fruits and instrumentalities of his crimes, and both applications resulted in two different magistrate judges in two different districts issuing judicially-authorized warrants as a result. The First Warrant authorized the seizure and search of "*any* computer devices, cellphones, and storage media that may contain any electronically stored information" falling within the delineated categories. (*See* First Warrant, Attachment B at 1(B)). The evidence sought was not, as the defendant bizarrely claims, the contents of calls themselves, but rather the kinds of documents, records, and communications well known to exist on electronic devices generally. Moreover, the Second Warrant authorized the search of the very devices at issue, for similar reasons. The Court should therefore swiftly reject the defendant's argument that the law enforcement officers did not reasonably believe there was probable cause to seize the Arrest Devices

The defendant is also wrong that the Government waited unreasonably long before seeking a warrant to search the Arrest Devices. Once the Arrest Devices were seized, the law enforcement officers obtained a warrant within a reasonable amount of time given the circumstances. In the first instance, the Arrest Devices were transferred to New York; only once the devices were in the Southern District of New York could a warrant application be submitted to search them here. Because the investigation is based out of the Southern District of New York, it is more than reasonable for the Postal Inspectors here to have transferred the Arrest Devices into this District and then sought a warrant here for the Arrest Devices and Westin Devices together.

Citing *Smith*, the defendant argues that the 30-day delay between the seizure of the Arrest Devices on April 22, 2021, and the procurement of a warrant to search them on May 21, 2021 was unreasonable under the Fourth Amendment. While the Government acknowledges that *Smith* found that a month-long delay was unreasonable on the facts of that case, the *Smith* court explicitly acknowledged that "the constitutional reasonableness of delay" is not subject to "bright-line rules," but rather "depends on the assessment and balancing of multiple factors." *Smith*, 967 F.3d at 212. As noted, those factors include not just (1) the length of the delay, but also (2) the importance of the seized property to the defendant, (3) whether the defendant has a reduced property interest in the seized property, and (4) the justification for the delay. *Id.* at 202-03. In this case, each of these three factors weighs strongly against suppression.

Beginning with the importance of the seized property, even where the relevant property seized is of significant importance—and crediting the defendant at his word, the Arrest Devices were important to him—evaluation of this factor "must take into account the practical realities of the case at hand." *In re Application for Search Warrant*, 527 F. Supp. 3d 179, 185 (D. Conn. 2020). In doing so, the Court should consider not only the importance of the property, but also its utility, in all the circumstances. In this case, the defendant, unlike the defendant in *Smith*, was detained following the seizure of the devices, including for far longer than the entirety of the period of delay between the Arrest Devices being seized and the issuance of the Second Warrant authorizing their search. "As such, he would [have been] unable to make use of the devices, even if they had not been seized." *Id.* (citing *United States v. Kowalczyk*, 08 Cr. 0095 (GMK), 2012 WL 3201975, at *23 (D. Or. Aug. 3, 2012) (Because defendant "was in custody, there was no evidence that withholding access to his computers and other digital evidence was prejudicial; he had no serious possessory interest at stake.")). In other words, because the defendant could not lawfully possess the Arrest Devices while detained, the possessory interest implicated by the

Fourth Amendment was simply not applicable here. The defendant was incarcerated for well more than the period of delay—and indeed, did not even specifically request the devices until eight months after his arrest. *See* Def. Mem. at 20. "Where the individual has little desire or ability to use or possess the seized property, the need for this protection is greatly diminished." *In re Application*, 527 F. Supp. 3d at 185 (citation omitted); *see also United States v. Corbett*, 20 Cr. 213 (KAM), 2012 WL 4480626, at *5 (E.D.N.Y. Sept. 30, 2021) (denying motion to suppress where search occurred 101 days after seizure, and finding that the inability to possess or use the seized cell phones while incarcerated significantly diminished the importance of their prompt return during the delay); *United States v. William Tisdol*, No. 20-cr-264 (JBA), 2021 WL 2349753, at *4 (D. Conn. June 9, 2021) (reasoning that "while cell phones generally are of significant importance to their owners, the importance of this cell phone to [defendant] was diminished at this time because he was incarcerated and would not have been able to access it even if it had not been seized").

Regarding the third factor, whether the defendant's property interest was diminished, the defendant focuses on his lack of consent, but his property interest in the Arrest Devices was hugely diminished given the circumstances of the investigation. Unlike in *Smith*, where the defendant had not yet been charged with possession of child pornography when the relevant device was seized and would not have been charged absent the device containing evidence of the crime, here, the defendant had already been charged by Complaint—and mere days after the Complaint was sworn and the defendant then arrested, a magistrate judge issued the First Warrant, which, as described above, provided judicially-authorized permission to search the very type of electronic device represented by the Arrest Devices. *See Smith*, 967 F.3d at 209.

Finally, with respect to the fourth factor, the justification for the delay, the Second Circuit in *Smith* found that law enforcement's 31-day delay in seeking a warrant was unreasonable in part

because law enforcement took no other investigative steps related to the defendant between the time of his arrest and the time law enforcement sought the warrant for the devices seized incident to arrest. Here, as the defendant's motion makes clear, USPIS continued to investigate and gather evidence of the defendant's crimes after the Arrest Devices were seized, including, among other things, by obtaining the First Warrant. Moreover, here, unlike in *Smith*, the devices needed to be transported from the Southern District of Florida to the Southern District of New York, so that investigators could obtain a warrant in this district, as would be necessary to conduct the search here. Accordingly, the fruits of the Arrest Devices should not be suppressed for the Government's failure to obtain a warrant in a reasonable time.

Even if the Court now finds that the delay between USPIS's seizure of the Arrest Devices and the First Warrant was unreasonable, suppression of the Arrest Devices is not warranted here, because there is no evidence that Inspector-1 acted with a deliberate intent to violate the defendant's rights or that it was reckless or grossly negligent for him to allow a month pass before applying for a warrant. *See Smith*, 967 F.3d at 212 (upholding denial of motion to suppress based on unreasonable delay where lack of intent or recklessness in delay meant suppression would have "no appreciable deterrent value"). Here, in seeking the Second Warrant on May 21, 2021, Inspector-1 fairly and accurately disclosed that he took possession of the Arrest Devices on or about April 22, 2021, and reasonably relied on the Second Warrant in searching the Arrest Devices. As such, Inspector-1 acted in good faith, and the defendant's motion to suppress the Second Warrant as to the Arrest Devices should be denied.

## II.  The Searches of the Westin Devices Were Lawfully Undertaken Pursuant to the Second Warrant, Following a Valid Seizure Supported by Probable Cause and Which was Not Overbroad

The defendant seeks suppression of the Westin Devices on the grounds that they were purportedly seized beyond the scope of the First Warrant in violation of the Fourth Amendment,

and because law enforcement's seizure of items from the Westin was overbroad. Because the defendant no longer had a privacy interest in the Westin Devices and because Westin personnel voluntarily provided them to law enforcement, they were not obtained by law enforcement pursuant to the First Warrant. But even if the Westin Devices had been, the claimed error in the First Warrant had no bearing on the finding of probable cause to seize the defendant's electronics, and any seizure of the defendant's belongings was not overbroad. Finally, law enforcement acted in good faith in obtaining the Second Warrant before searching the Westin Devices and was entitled to rely on the Second Warrant to do so.

## A. Applicable Law

"In order to prevail on a contention that a search violated the Fourth Amendment, an accused must show that he had a legitimate expectation of privacy in a searched place or item." *United States v. Rahme*, 813 F.2d 31, 34 (2d Cir. 1987); *United States v. Abiodun,* No. 04 CR. 1316 (DC), 2005 WL 3117305, at *2 (S.D.N.Y. Nov. 22, 2005) (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Chuang*, 897 F.2d 646, 649 (2d Cir.1990). To do so, the "defendant must prove both that he had a subjective expectation of privacy in the area searched and that society is 'prepared to accept that expectation as objectively reasonable.'" *Abiodun,* 2005 WL 3117305, at *2 (citing *California v. Greenwood*, 486 U.S. 35, 39-40 (1988); *United States v. Paulino*, 850 F.2d 93, 97 (2d Cir.1988)).

In the absence of a warrant, "a search conducted pursuant to voluntary consent by an authorized third party" remains valid. *Abiodun*, 2005 WL 3117305, at *4 (citing *United States v. Lewis,* 386 F.3d 475, 481 (2d Cir.2004) (citing *Katz v. United States,* 389 U.S. 347, 357 (1967)). The Second Circuit has held that "third party consent to a search will validate the search if two prongs are present: first, the third party had access to the area searched, and, second[, the third party had] ...:(a) common authority over the area; or (b) a substantial interest in the area; or (c)

permission to gain access." *United States v. Davis,* 967 F.2d 84, 87 (2d Cir.1992). Even where a third party lacks actual authority to provide consent, government agents may nonetheless rely on that consent so long as the "facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Koch v. Town of Brattleboro, Vermont*, 287 F.3d 162, 167 (2d Cir. 2002).

In deciding whether a search warrant is supported by probable cause, a court must determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998). "In assessing the proof of probable cause, the government's affidavit in support of the search warrant must be read as a whole, and construed realistically." *Id.* A court must "resolve any doubt about the existence of probable cause in favor of upholding the warrant," *id.*, and must accord "considerable deference to the probable cause determination of the issuing magistrate," *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) (citing 462 U.S. 213, 238-39 (1983)). So long as there is a substantial basis for concluding that probable cause existed, "the resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

Probable cause exists "where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citations omitted). The inquiry requires evaluating the totality of the circumstances to determine whether there is "the probability, and not a prima facie showing, of criminal activity." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). A warrant application may rely on hearsay from an informant to establish probable cause. *See Jones v. United States*, 362 U.S. 257, 269 (1960). The same totality-of-the-circumstances analysis

applies, and particularly relevant are the informant's veracity, reliability, and basis for knowledge. *See United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004).

The Fourth Amendment requires that search warrant particularly describe the place to be searched, and court look "directly to the text of the search warrant to determine the permissible scope of an authorized search." *See United States v. Bershchansky*, 788 F.3d 102, 111 (2d Cir. 2015). The requirement "curtail[s] the officers' discretion when executing the warrant." *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992). A search might be impermissible if "the description [. . .] is so vague that it fails reasonably to alert executing officers to the limits of their search authority." *See United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011). But "inaccuracies or ambiguities in a warrant do not necessarily render a warrant invalid under the Fourth Amendment." *United States v. Voustianiouk*, 685 F.3d 206, 212 (2d Cir. 2012). And indeed, under the good-faith exception, "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" may be exempt from the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984). This turns on "'whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" *Herring v. United States*, 555 U.S. 135, 145 (2009) (quoting *Leon*, 468 U.S. at 922 n.23). Because suppression is a "last resort," "most searches conducted pursuant to a warrant would likely fall within [*Leon*'s] protection." *Clark*, 638 F.3d at 99-100.

## B. Discussion

The defendant's motion to suppress the fruits of the Second Warrant rests on his faulty claim that errors in the First Warrant tainted the subsequent lawful search. However, the Westin Devices were not seized pursuant to the First Warrant; they were instead provided voluntarily to law enforcement by Westin personnel. As the First and Second Affidavits made clear, the defendant was staying at the Westin but was due to leave on April 22, 2021 due to nonpayment.

The invoice submitted by the defendant in support of his motion confirms that the defendant owed over $2,000 to the Westin as of that date and his invoice included a notation that he have "NO ACCESS" to his room. (*See* Def. Mot. Ex. C). By the time Postal Inspectors arrived at the Westin to retrieve the contents of the defendant's room on May 1, 2021, Westin personnel had removed the defendant's items from his room and they were being held by Westin staff elsewhere in the hotel. The defendant does not and cannot claim he had a privacy interest in the location where Westin personnel was then-storing his belongings.

Because the defendant lacked a reasonable expectation of privacy in the location of the Westin Devices at the time those devices were provided by Westin personnel to USPIS, the defendant lacks standing to challenge their seizure and his motion must be denied for this reason alone. The Second Circuit has held that, "when a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or *in any articles therein of which the hotel lawfully takes possession*." *Rahme*, 813 F.2d at 34 (citing *United States v. Parizo*, 514 F.2d 52, 54–55 (2d Cir.1975); *United States v. Cowan*, 396 F.2d 83, 86–87 (2d Cir.1968); accord *United States v. Rambo*, 789 F.2d 1289, 1295–96 (8th Cir.1986); *United States v. Akin*, 562 F.2d 459, 464 (7th Cir.1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978); *United States v. Haddad*, 558 F.2d 968, 975 (9th Cir.1977); *United States v. Croft*, 429 F.2d 884, 887 (10th Cir.1970); *cf. Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960) (when defendant vacated room and hotel took exclusive possession, government agent's search of items left behind, with the consent of the hotel, was not wrongful). In *Rahme*, the Second Circuit explicitly rejected a defendant's claim that he maintained a privacy interest in the items in his hotel room following his arrest. *Id.* The defendant's lack of a reasonable expectation of privacy is fatal to his claim for suppression.

Moreover, though not required here in light of the defendant's lack of an expectation of privacy, the Postal Inspectors who received the Westin Devices had probable cause to believe they contained evidence, as demonstrated by the First Warrant, and their search and seizure was done in good faith, defeating any claim for suppression here. And, because there are no claimed errors in the Second Warrant, and the Second Affidavit accurately described the sequence of events leading to the seizure of the Westin Devices, USPIS was entitled to rely on the Second Warrant in searching the Westin Devices.

Even if the defendant could establish a reasonable expectation of privacy in his belongings being held by the Westin, his motion would still fail because USPIS reasonably relied on the Westin's apparent authority to provide USPIS with the items left behind in the defendant's hotel room, including the Westin Devices. *See Davis,* 967 F.2d at 87. As of May 1, 2021, the date USPIS picked up the Westin Devices, the Westin Devices were no longer located in the defendant's hotel room and instead were being stored in an area of the hotel where Westin personnel could access them. Second Affidavit ¶ 14. Upon being presented with the First Warrant and being told that the First Warrant sought to obtain the defendant's belongings, Westin personnel voluntarily provided the items that were previously held in the defendant's room to the Postal Inspectors. *Id.* As such, it was entirely appropriate for USPIS to rely on the Westin's consent to provide the Westin Devices and to accept those devices on consent. *Koch,* 287 F.3d at 167 (finding government agents may rely on third party consent so long as "the "facts available to the officer at the moment … warrant a man of reasonable caution in the belief that the consenting party had authority over the premises."). Accordingly, because USPIS reasonably relied on Westin personnel's consent to take the Westin Devices, USPIS's seizure of the items was lawful.

Even if the Court were to now conclude – which it should not – that the Westin provided USPIS with the Westin Devices pursuant to the First Warrant, none of the alleged errors in the

First Warrant would justify suppression here and none would negate the prior finding of probable cause related to these devices. In support of his motion, the defendant makes much of the fact that the hotel room listed as the location to be searched in the First Warrant included a set of transposed numbers: 1174, rather than the correct number of the defendant's room, 1147. *See* Mot. at 9. Had the Postal Inspectors searched the *wrong room*, and somehow seized evidence from that wrong room, the defendant might have a stronger argument. But, the circumstances here are markedly different from instances in which law enforcement officers search locations they could not reasonably have believed they had a right to search. Here, law enforcement officers did not search a location, or materials or devices, beyond the scope of the warrant, and the apparent typo is not dispositive. *See United States v. Rocha-Gomez*, 412 F. Supp. 3d 369, 377 (S.D.N.Y. 2019) (holding that an incorrect description of the number on a door to be searched did "not itself render the warrant invalid" and nothing that "a warrant with partially incorrect information is still valid so long as there is 'other information in the warrant' that 'strongly indicate[s] a particular location' is the correct one to search") (citation omitted) (alterations in original).

Instead, as set forth in detail in the Second Affidavit, by the time the First Warrant was served, those possessions of the defendant were (1) no longer in the hotel room in which he previously had resided, and (2) no longer in a physical space in which he had a privacy interest. Accordingly, the Postal Inspectors provided the First Warrant to employees of the Westin, who had in their possession the relevant contents of the room in which the defendant previously had been staying. (Second Affidavit ¶ 14). In the first instance, the warrant sufficiently identified the items to be seized and searched, which were in fact the items that were seized by USPIS from Westin personnel. Under these circumstances, no law enforcement officer could possibly have thought that providing the First Warrant to hotel personnel for the contents of a room that had been vacated would know that doing so was illegal, because USPIS had already obtained the First

Warrant, and had therefore established probable cause to seize and search precisely the evidence that USPIS then obtained from the Westin.

But even if the Court were to now conclude that USPIS should not have accepted the Westin Devices from hotel personnel – which, as set forth above, it should not – the facts and circumstances of USPIS's receipt of the devices were fully disclosed in the Second Affidavit, to a second Magistrate Judge sitting in this district. Specifically, the Second Affidavit made clear for the Magistrate Judge who authorized the search of the Westin Devices the precise sequence of events that led to USPIS taking possession of those devices, namely that USPIS obtained a warrant to search the defendant's hotel room, that the defendant's belongings were no longer in the hotel room when the First Warrant was served, and that Westin personnel voluntarily turned the defendant's items over to USPIS when they learned that USPIS had previously obtained a warrant for seize those items. (Second Affidavit ¶¶ 12-14). In doing so, Inspector-1 made clear that his understanding of the location of the defendant's belongings came from Hotel Employee-1. (*Id.*).[2] The Magistrate Judge, after being apprised of these facts, issued the Second Warrant authorizing USPIS to search the Westin Devices. (Def. Mot. Ex. I).

In light of the foregoing, Inspector-1's reliance on the Westin's control over the area in which the Westin Devices were located, the Westin's consent to provide the devices to USPIS, the finding of probable cause in the First Warrant, was objectively reasonable and done in good faith, defeating the defendant's motion. Moreover, to the extent any question may have arisen as to the circumstances of the seizure of the Westin Devices, those questions were fully and fairly addressed

---

[2]     Nor did USPIS seize items from the Westin outside the scope of the First Warrant. As the affidavit submitted by the defendant's mother, Margaret McGuirk makes clear, the Westin provided USPIS with the defendant's electronic devices and the Westin maintained "the rest of [the defendant's] belongings…in two black garbage bags, which were in the Hotel's business center." *See* Def. Mot. Ex. A.

in the Second Affidavit prior to any search of the Westin Devices commenced. For the same reason USPIS was entitled to rely on the Second Warrant to search the Arrest Devices, USPIS was entitled to rely on the same warrant to search the Westin Devices, and the motion should be denied without a hearing.[3]

### III. The Allegations of Misconduct Are Utterly Baseless and There Is No Good Cause For A *Franks* Hearing

Finally, the defendant asserts *Franks* claims related to errors he purports to identify in both the First Affidavit and the Second Affidavit. As to the First Affidavit, the defendant's claims are moot because, as noted above, the agents did not rely on the First Affidavit in seizing or searching the devices. As to the Second Affidavit, as discussed below, the errors that the defendant purports to identify are not in fact errors and, in any event, concerned facts that were not material to the finding of probable cause.

#### A. Applicable Law

A defendant seeking to challenge the validity of a warrant on the basis of alleged errors or inaccuracies in the application faces a high bar. *See generally Franks v. Delaware*, 438 U.S. 154, 155-156 (1978). Pursuant to *Franks*, evidence will not be suppressed unless both "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.'" *United States v. Canfield*, 212 F.3d 713, 717-718 (2d Cir. 2000) (citing *Franks*, 438 U.S. at 164-72).

With respect to the first prong, the defendant bears the burden of establishing that "the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless

---

[3] Because the search and seizure of the defendant's electronics was lawful, for the reasons set forth herein, Rule 41(g) of the Federal Rules of Criminal Procedure does not apply and the defendant's motion for return of property should likewise be denied.

disregard for the truth." *Canfield*, 212 F.3d at 717-18; *see also United States v. Martin*, 426 F.3d 68, 73 (2d Cir. 2005) (defendant must show that "the affidavit contained 'a false statement knowingly and intentionally, or with reckless disregard for the truth.'") (quoting *Franks*, 438 U.S. at 156). Moreover, because "every decision not to include certain information in the affidavit is 'intentional' insofar as it is made knowingly," the "mere intent to exclude information is . . . insufficient." *United States v. Awadallah*, 349 F.3d 42, 67-68 (2d Cir. 2003). Instead, a defendant must demonstrate omissions that "are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *Id.* at 68.

An affiant "does not necessarily act with 'reckless disregard for the truth' simply because he or she omits certain evidence that a reviewing court, in its judgment, considers to be 'clearly critical'" and "an inference [of reckless disregard for the truth] is not to be automatically drawn simply because a reasonable person would have included the omitted information." *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (citation and brackets omitted). Instead, "[t]o prove reckless disregard for the truth, the defendant[] must prove that the affiant in fact entertained serious doubts as to the truth of his allegations." *Id.* Because "[a]ll storytelling involves an element of selectivity," *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000), "an affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Awadallah*, 349 F.3d at 67-68 (quoting *United States v. Colkley,* 899 F.2d 297, 300-01 (4th Cir.1990)). Thus, "*Franks* claims based on omissions are less likely to justify suppression than claims of intentionally or recklessly false assertions." *United States v. Vilar*, No. S3 05 Cr. 621 (KMK), 2007 WL 1075041, at *27 (S.D.N.Y. April 4, 2007); *see also United States v. Perez*, 247 F.Supp.2d 459, 472 (S.D.N.Y. 2003) ("As for omissions, they are less likely to present a question of impermissible official conduct because allegations of omissions may result in endless conjecture about investigative leads, fragments of information, or other matters that

might . . . have redounded to defendant's benefit had they been included.") (internal quotation marks and citations omitted).

With respect to the second prong—*i.e.*, the materiality of the allegedly false statement—under *Franks*, materiality is "gauge[d] . . . by a process of subtraction:  To determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant.  If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." *Awadallah*, 349 F.3d at 64 (*quoting Canfield*, 212 F.3d at 718); *see also Franks*, 438 U.S. at 171-172 ("If, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing [to challenge the sufficiency of the affidavit] is required.").

The standard of probable cause applied to a warrant, once it has been stripped of the alleged inaccuracies, or once omitted information is included, is the same practical standard applied in other contexts.  That is, the warrant affidavit must be sufficient to provide a "'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 233 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)); *see also United States v. Smith*, 9 F.3d 1007 (2d Cir. 1993); *Rivera*, 928 F.2d at 602.  "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 602 (quoting *Ventresca*, 380 U.S. at 109).

The defendant bears the burden of establishing both components—*i.e.*, materiality and intent—by a preponderance of the evidence.  *See United States v. Klump*, 536 F.3d 113, 119 (2d

Cir. 2008). Making this showing is not an easy task because, as the Second Circuit has observed, "[t]he *Franks* standard is a high one." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).

Finally, to even be entitled to a hearing on a claim raised pursuant to *Franks*, a defendant must first make a "'substantial preliminary showing' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008). "The burden to obtain such a hearing is a heavy one, and such hearings are exceedingly rare." *United States v. Melendez*, No. 16 Cr. 33 (LTS), 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016); *see also Franks*, 438 U.S. at 171-72 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof."); *United States v. Keith*, No. 15 Cr. 827 (AJN), 2016 WL 1644370, at *2 (S.D.N.Y. Apr. 22, 2016) ("Because materiality, which turns on the existence of probable cause, is a legal question, resolving whether information allegedly omitted from a search warrant application was material does not require an evidentiary hearing.").

## B. Discussion

### i. The Defendant Fails to Identify Any Material Inaccuracies of Omissions

The Motion fails in the first instance because it does not identify any material inaccuracies or omissions. Indeed, the Motion makes only the barest, flimsiest attempts to satisfy this requirement. The first allegation is that Inspector-1 "falsely" stated that the defendant was arrested at the Westin, when in fact, the defendant says, he was arrested 0.1 miles from the Westin, in front of another, adjacent hotel. *See* Def. Mem. at 33. The idea that this statement was material to the issuance of the warrant is laughable—which the defendant surely must know, because he uses it

only for purposes of wild speculation and innuendo.  *Id.* ("[S]ince the Postal Inspector was willing to misrepresent the location of Mr. Franzone's arrest, what else did he knowingly misrepresent?").  This is exactly the kind of "conclusory" statement that *Franks* warned would not merit a hearing.  *Franks*, 438 U.S. at 171.  Additionally, the defendant does not even attempt to argue that this statement was intentional, rather than being the result of finding the defendant outside and nearby the hotel at which he was staying—which happened to technically be the property of another adjacent hotel—much less provide any evidence of such a claim.

Similarly, the defendant does not—because he cannot—provide any proof whatsoever that the other two claimed intentional misstatements were even false.  First, he says the defendant "was not due to leave the Westin the day of his arrest for nonpayment" because "Mr. Franzone was not planning to check out that day."  *Id.* at 34.  But those two ideas are not the same.  The First Affidavit, submitted in support of the First Warrant, states that Inspector-1 spoke to a manager of the Westin, who informed him that the defendant "was slated to leave the hotel that day due to nonpayment."  (First Affidavit ¶ 10).  First, the defendant makes no argument whatsoever that this representation by Inspector-1 was false—that the hotel manager told him this.  And indeed, the idea that *the hotel* planned to evict the defendant that day is in no way at odds with the defendant himself not planning to check out; the very nature of being "slated to leave that day due to nonpayment" suggests involuntariness.  The defendant's self-serving claim that he did not intend to leave that day is both unsupported by any evidence, and is not even inconsistent with the statement in the application.

Finally, the defendant sets forth no evidence that the statement that the Westin was preserving the defendant's belongings in his room was false at the time it was made.  The defendant's citation to the claim that "we know that by the time that Dr. McGuirk first spoke to Alain to request that her son's things be returned, all of Mr. Franzone's belongings had already

been removed from the hotel room" refers to the McGuirk affidavit at ¶ 6. But that paragraph does not establish the timing, and in fact it instead states plainly that her conversation with Alain took place *after* the defendant's items had been provided to the Postal Inspection Service. *Id.* ("Within a few days of speaking with Robert, I spoke with Alain, who told me, in sum and substance, that my son's electronic devices had been picked up [. . .]."). There is no evidence that the items were removed before the First Affidavit in support of the First Warrant was submitted to the Magistrate Judge, and certainly no evidence that even if the items had been removed, that Inspector-1 was aware of this fact. Additionally, and finally, the defendant makes no argument that these supposed misstatements were *material*—nor could he. Plainly, even without the supposed misrepresentations, the affidavit contained "a residue of independent and lawful information sufficient to support probable cause." *Awadallah*, 349 F.3d at 65.

### ii. The Defendant's Motion Fails to Make the Required Showing of Intentional or Reckless Omission and No Hearing is Warranted

Even assuming the defendant could make a showing on the first prong of the *Franks* standard (which he cannot), the motion nevertheless would fail because it makes no showing whatsoever that the purported incorrect statements were either purposefully or recklessly misleading. *See Rajaratnam*, 719 F.3d at 154 ("the reviewing court must be presented with credible and probative evidence that the omission of information . . . was designed to mislead or was made in reckless disregard of whether [it] would mislead"). The defendant's argument on this issue is limited a few meandering sentences conceding that "it is possible that the …Westin employee" gave Inspector-1 "bad information," the defendant makes no effort to explain how it was deliberately or intentionally misleading for Inspector-1 to convey that information in support of the First Warrant. Moreover, the claimed inaccuracies are not the type of misstatements that could give rise to an inference of a reckless or intentional attempt to mislead. For instance, the

claimed inaccuracies concerning where the defendant had been arrested or whether he was planning on checking out of the hotel are very marginal to the essence of the affidavit's probable cause showing, and are not the types of misstatements that an affiant would make in order mislead a reviewing judge into issuing a warrant.

The defense advances no facts or evidence showing intentional or reckless conduct for the affidavits for either the First Warrant or the Second Warrant, other than the mere fact of the claimed misstatements and the defense's incorrect contention that the information is material. This does not amount to a "substantial preliminary showing." *See Falso*, 544 F.3d at 125. The defendant's accusations are conclusory, unsupported, and wrong. Accordingly, because the defendant fails to meet his burden of making a "substantial preliminary showing" with respect to either prong of the *Franks* standard, no hearing on the pending motion is required.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the defendant's motion to suppress should be denied.

Dated: New York, New York
July 29, 2022

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____

Kiersten A. Fletcher
Alex Rossmiller
Assistant United States Attorneys
(212) 637-2238/2415