UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                    :
UNITED STATES OF AMERICA,                           :
                                                    :
                    v.                              :
                                                    :                21-CR-446 (VSB)
ANDREW FRANZONE                                     :
                                                    :                    **ORDER**
                              Defendant.            :
                                                    :
--------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

  As the parties are aware a conference is scheduled for Wednesday, September 13, 2023,

at 2:30 p.m..  At that conference, I will hear oral argument related to Defendant's second motion

to suppress.  To facilitate oral argument, it is hereby

  ORDERD that the parties should prepared to discuss/answer the following questions at

oral argument:

1.  What were the underlying allegations in the complaint filed in *Hersch v. FF Fund
    Management, LLC*, C.A. No. 2019-0613-SG?

2.  Why was the Status Quo Order sought in *Hersch v. FF Fund Management, LLC*,
    C.A. No. 2019-0613-SG?

3.  Were there any requests made for the fund to engage in transactions in excess of
    $50,000 between the filing of the Status Quo Order and the fund's bankruptcy
    filing on September 24, 2019?

4.  Were redemption requests made in or about June 2019?

1

5.  What is the basis for the statement that the "triggering event for the bankruptcy was the status quo order"?  (Doc. 84 at 11.)[1]

6.  If the fund had the money to fulfill the redemption requests, could it have followed the process outlined in the Status Quo Order related to transactions in excess of $50,000 to fulfill those redemption requests rather than filing for bankruptcy?

7.  Is it an accurate statement that the Chief Restructuring Officer ("CRO") "endeavored to locate and value FF Fund's assets."?  (Doc. 1 ¶ 14 (b).)

8.  Is it an accurate statement that the CRO discovered that "the entity that held more than 80% of [the fund's] assets as of 2018, was not in fact a wholly-owned subsidiary of [the fund but was] . . . owned and controlled by [Franzone]"?  (Doc. 1 ¶ 14 (c).)

9.  Is the defense claiming that it was material that the fund was in bankruptcy but was not in the process of liquidating at the time the complaint was filed?  If so, why is it material?

    a.  Did Postal Inspector O'Rourke make any statements about the significance of the statement in the complaint that the fund was in liquidation at the time of the complaint's filing?

    b.  Did Inspector O'Rourke ever state that the bankruptcy court had made a finding of negligence or wrongdoing?

    c.  Did Inspector O'Rourke ever state or opine "that the liquidation was precipitated by Mr. Franzone's alleged wrongdoing"?

---

[1] The page number referenced in this is the page given by the court's Case Management/Electronic Case Files system ("ECF").

10. Between June 2019 and the fund's filing for bankruptcy on September 24, 2019, did the fund fulfill any redemption requests? If so, is that fact in the record before me?

11. By the time Inspector O'Rourke's affidavit was submitted in connection with the Google search warrant, was it known to the Government that the bankruptcy petition was not filed in June 2019 but was filed in September 2019? If so, why was this mistake not corrected in Inspector O'Rourke's affidavit?

12. By the time Inspector O'Rourke's affidavit was submitted in connection with the Google search warrant, was it known to the Government that the fund was not in process of liquidating at the time the complaint was filed? If so, why was this mistake not corrected in Inspector O'Rourke's affidavit?

13. Did Inspector O'Rourke ever state in his affidavit that the CRO was appointed or approved to replace Franzone in any capacity at the fund?

14. Did Inspector O'Rourke state and/or opine in his affidavit that "the bankruptcy judge had assigned a CRO to replace Mr. Franzone as the fund's General Partner ("GP") after a finding or negligence or wrongdoing."?

15. Is it factually accurate that the defendant provided investors with monthly "performance reports" attached to emails from his Google email address?

16. Did Inspector O'Rourke ever state in his affidavit that the only way investors received copies of "performance reports" was by Franzone sending copies using his Google email address?

17. Is it undisputed that Stuart Shikiar was a Registered Investment Advisor ("RIA")?

18. Do RIAs make investment recommendations to clients?

3

19. Under certain circumstances, can RIAs make investments on behalf of clients?

20. Is the misstatement related to the Shikiar email that Shikiar is described as a "prospective investor"?

    a.   In order to be a "prospective investor" would Shikiar have to have met Franzone before receiving the email?

    b.   Did Frazone state in his email that he was "just trading on the screens throughout all of the days"?

    c.   During Investor-2's deposition and/or in Investor-2's affidavit submitted in connection with a litigation, did Investor-2 state in words or substance that Frazone had admitted to Investor-2 and Investor-3 during a meeting in 2019 that the fund "had not engaged in securities trading for the prior two years."? (*See* Doc. 1 ¶ 12b.)

    d.   During a meeting on or about April 30, 2019 between Franzone and Wealth Manager-1, did Inspector O'Rourke learn that Franzone told Wealth Manager-1 during that meeting that the fund "had not engaged in public securities trading since January 2018."? (*See* Doc. 1 ¶ 11.)

21. Are there any cases where a court has suppressed evidence seized from a defendant's Google applications based on the argument that the search warrant affidavit only related to one Google application?

22. Are there any cases where a court has denied a suppression motion for evidence seized from a defendant's Google applications where a defendant argued that the search warrant affidavit only related to one Google application?

23. Where in the defense papers, if anywhere, does the defense argue that the good

faith exception to the exclusionary rule does not apply in this case?

SO ORDERED.

Dated:    September 12, 2023
          New York, New York

Vernon S. Broderick
United States District Judge