LAW OFFICE OF
# BENJAMIN SILVERMAN
224 WEST 30TH ST., SUITE 302
NEW YORK, NY 10001

TEL (212) 203-8074
FAX (646) 843-3938
Benjamin@bsilvermanlaw.com

January 5, 2024

**BY ECF**

Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re: *United States v. Andrew Franzone*, 21 Cr. 446 (VSB)

Your Honor:

    We write in advance of next week's status conference to raise new and pertinent information bearing on questions that the Court raised at the September 26, 2023, conference.

    First, the Court inquired at the conference about the value of assets remaining in FF Fund I, L.P. ("FF Fund"). Last month in Florida bankruptcy court, Paul J. Battista, counsel for the liquidating trustee, announced that FF Fund recently sold $55,526,033.24 worth of shares in CoreWeave, a GPU cloud service provider. *See* Ex. A (12/13/23 Bankr. Tr.) at 5:13-6:5. Even after this sale, FF Fund continues to hold over 67,000 preferred CoreWeave shares worth approximately $20 million based on the valuation in the prior sale. *See id.* Mr. Battista also anticipates that CoreWeave will undergo an initial public offering that may increase the value of the unsold shares. *See* Ex. B (11/15/23 Bankr. Ct Tr.) at 11:5-11:16. According to Mr. Battista, the FF Fund investors and alleged victims in this action, who are all limited partners, "could get as much as **four times**" their equity holdings in FF Fund as of the chapter 11 petition date. Ex B at 14:17-19 (emphasis added). Mr. Batista's estimate was based off the CoreWeave shares that have already been sold and did not account for the at least $20 million in additional CoreWeave shares that FF Fund still owns. Simply put, the remaining investors in FF Fund will all reap substantial profits. It also bears noting that CoreWeave is just one of 49 companies held in the FF Fund portfolio.

Second, we have learned material information about Gregory Hersch, an alleged victim and likely witness. Gregory Hersch's father, Dennis Hersch, who is now deceased, commenced the lawsuit about which the Court inquired in its September 12, 2023 Order (Dkt. 93). On October 4, 2023, Gregory Hersch paid a $200,000 administrative penalty to the Securities and Exchange Commission to settle charges that he did not adequately disclose conflicts of interest in connection with his clients' investments in FF Fund. *See* Ex. C (SEC press release). This comes after an $825,000 settlement he paid to another alleged victim and former client. Ex. D.

We intend to confer with the government about related *Brady* and *Giglio* material and anticipate additional discovery to be forthcoming, which may precipitate additional motion practice.

Thank you for your consideration.

Respectfully submitted,

/s/ Benjamin Silverman
Benjamin Silverman
Deborah Colson

cc: Counsel of record (by ECF)

# Exhibit A

```
                  UNITED STATES BANKRUPTCY COURT
                   SOUTHERN DISTRICT OF FLORIDA
                          MIAMI DIVISION
In Re:                          Chapter 11
FF FUND I, LLP,                 Case No.:  19-22744-LMI
F5 BUSINESS INVESTMENT          Case No.:  20-10996
PARTNERS, LLC,
    Debtors.
_____/
SONEET KAPILA,
      Plaintiff,
vs                              Adv. No.:  22-1017-LMI

F1 GENERAL TRADING PARTNERS,
L.P., F3 REAL ESTATE
PARTNERS, LLC, F7 GROUP
OPERATING PARTNERS, LLC,
FF FUND MANAGEMENT, LLC
FF TRADING MANAGEMENT, LLC,
FF RESERVE ACCOUNT, LLC, and
ANDREW T. FRANZONE, LLC,
    Defendants.
_____/
```

ECF # 68

December 13, 2023

The above-entitled cause came on for a hearing before the Honorable LAUREL M. ISICOFF, Judge in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, on Wednesday, December 13, 2023, commencing at or about 9:57 a.m., and the following proceedings were had:

Transcribed from a digital recording by:
Helayne Wills, Court Reporter

```
 1   APPEARANCES:
 2
         SONEET KAPILA, Liquidating Trustee (via Zoom)
 3
         VENABLE LLP, by
 4       PAUL J. BATTISTA, ESQ.,
 5       HEATHER L. HARMON, ESQ.,
         on behalf of the Plaintiff, Liquidating
 6       Trustee, Soneet Kapila
 7
         BERGER SINGERMAN, LLP, by
 8       SAMUEL J. CAPUANO, ESQ.,
         and
 9       WOLLMUTH MAHER & DEUTSCH, by
         BRAD J. AXELROD, ESQ.,
10       on behalf of the Liquidating Trustee, Soneet
         Kapila
11
12       OFFICE OF THE UNITED STATES TRUSTEE, by
         DAN L. GOLD, ESQ.,
13       on behalf of the U.S. Trustee
14
         KELLEY KAPLAN & ELLER, P.L., by
15       DANA KAPLAN, ESQ., (via Zoom)
         on behalf of the Defendants
16
17       ANDREW FRANZONE
         Pro Se
18
19       ALSO PRESENT:
         ECRO:  Electronic Court Reporting Operator
20
21
22
23
24
25
```

1  And then, of course, we'll go to Mr. Franzone's
2  motion, and the response that was filed on behalf of
3  the liquidating trustee, all of which I have
4  reviewed.
5       Before we do that, I would like
6  Mr. Battista or Ms. Harmon, whoever is going to be
7  speaking, to give me an update on what has happened
8  since -- and of course, I did get a little flavor,
9  because it was in the response, but why don't you
10 bring me up-to-date formally on the record with
11 respect of what has happened since the last time we
12 were together.
13      MR. BATTISTA: Yes, Your Honor. Paul
14 Battista for Mr. Kapila.
15      We did describe it in the motion.
16 Mr. Kapila did submit the entirety of the FF Fund
17 interest in Coreweave for the tender offer in the
18 hope or expectation that it would be completely
19 funded. The tender offer was oversold, and so we
20 were only able -- not only -- we were able to sell
21 about two-thirds of our ownership interest. The
22 exact number that we were able to submit to the
23 tender offer was 182,245 preferred shares out of a
24 total of 250,000 that the FF Fund Estate owned.
25      In exchange for that we received

1  $55,526,033.24.  That money is now in Mr. Kapila's
2  possession as liquidating trustee.  And we continue
3  to own, because it was oversold, 67,755, the balance
4  of the 250,000 shares, preferred shares, in
5  Coreweave.
6        I'm not sure where -- I think I know where
7  Coreweave is going.  I think they're heading to an
8  IPO at some point in time.  We don't know whether
9  there will be another tender offer.  We're going to
10 sit and wait, and to the extent that there's an
11 opportunity to monetize the balance of that, in the
12 appropriate time Mr. Kapila will, of course, come
13 back to this court.
14       So that's where we stand.  The money has
15 been received, I think Mr. Kapila will confirm,
16 about a week ago.  It took a little bit of time for
17 that to be funded and to be transferred to the FF
18 Fund estate bank account.
19       THE COURT:  Okay.  Mr. Kapila, can you
20 confirm you have that amount in your account.
21       MR. KAPILA:  Yes, Judge.  I can confirm
22 that the amount is in the estate bank account.
23 Thank you.
24       THE COURT:  All right.  Thank you.
25       Ms. Kaplan, did you wish to make an

# Exhibit B

```
 1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF FLORIDA
 2                    MIAMI DIVISION
 3    In Re:                        Chapter 11
 4    FF FUND I, LLP,               Case No.:  19-22744-LMI
      F5 BUSINESS INVESTMENT        Case No.:  20-10996
 5    PARTNERS, LLC,
 6       Debtors.
      _____/
 7    SONEET KAPILA,
 8        Plaintiff,
      vs                            Adv. No.:  22-1017-LMI
 9
      F1 GENERAL TRADING PARTNERS,
10    L.P., F3 REAL ESTATE
      PARTNERS, LLC, F7 GROUP
11    OPERATING PARTNERS, LLC,
      FF FUND MANAGEMENT, LLC
12    FF TRADING MANAGEMENT, LLC,
      FF RESERVE ACCOUNT, LLC, and
13    ANDREW T. FRANZONE, LLC,
14        Defendants.
      _____/
15
16
17                    November 15, 2023
18          The above-entitled cause came on for a
19    hearing before the Honorable LAUREL M. ISICOFF,
20    Judge in the UNITED STATES BANKRUPTCY COURT, in and
21    for the SOUTHERN DISTRICT OF FLORIDA, on Wednesday,
22    November 15, 2023, commencing at or about
23    2:33 p.m., and the following proceedings were had:
24            Transcribed from a digital recording by:
                   Helayne Wills, Court Reporter
25
```

APPEARANCES:

SONEET KAPILA, Liquidating Trustee (via Zoom)

VENABLE LLP, by
PAUL J. BATTISTA, ESQ.,
HEATHER L. HARMON, ESQ.,
on behalf of the Plaintiff, Liquidating
Trustee, Soneet Kapila

OFFICE OF THE UNITED STATES TRUSTEE, by
DAN L. GOLD, ESQ.,
on behalf of the U.S. Trustee

ALSO PRESENT:
ECRO:  Electronic Court Reporting Operator

1  put all the shares into this tender offer and cash
2  it out.
3              THE COURT:  Are you asking me?
4              MR. BATTISTA:  I'm not.  I'm going to ask
5  you to approve his business judgment to do just
6  that.  Because we understand where this company is
7  going is an IPO.  After they go through this round
8  and maybe a second round of tender offers, their
9  goal was to go into an IPO.
10             I don't think people like Fidelity and
11 companies like that are investing, because they're
12 not going to get a return on the 600 million they're
13 putting in here.  So it's possible, if we were to
14 look back in a couple of years and this thing goes
15 into an IPO, if Mr. Kapila held back some shares, it
16 could be worth even more money.
17             THE COURT:  But --
18             MR. BATTISTA:  But it could also go the
19 other way.
20             THE COURT:  Right.  For whose benefit?  If
21 everybody is already going to get paid a hundred
22 percent, and if I read it directly, money would even
23 go back to Mr. Franzone.
24             MR. BATTISTA:  Not yet.  We'll talk about
25 that in a second.

1  We will have to revisit that and see whether or
2  not --
3           THE COURT:  What do you care, if everybody
4  gets a hundred percent?
5           MR. BATTISTA:  Well, I guess that's a
6  question that we'll have to face.  I think there are
7  a lot of people in this entity who do care as to
8  whether Mr. Franzone --
9           THE COURT:  In other words, who would the
10 money go to?
11          MR. BATTISTA:  To the limited partners.
12          THE COURT:  Oh, because they're limited
13 partners and not creditors, so there's no cap on any
14 of it.
15          MR. BATTISTA:  There's no cap.
16          THE COURT:  Right, right.
17          MR. BATTISTA:  And in fact, they could get
18 as much as four times what is their investment in
19 this entity, based on the numbers alone.
20          THE COURT:  That would make Mr. Kapila
21 even more popular than Harley Tropin was after
22 Premium.
23          MR. BATTISTA:  Hard to believe.  It's hard
24 to believe he could be more popular.
25          THE COURT:  All right.  I have another

# Exhibit C

# SEC Charges Investment Adviser and its CEO for Undisclosed Conflicts

ADMINISTRATIVE PROCEEDING
File No. 3-21771

**September 29, 2023** – The Securities and Exchange Commission today announced settled charges against New York City-based investment advisory firm Florence Capital Advisors, LLC ("FCA") and its principal owner and Chief Executive Officer, Gregory A. Hersch, for their failure to adequately disclose conflicts of interest in connection with client investments in a third-party private fund (the "Fund") from which FCA was also receiving substantial advisory fees.

According to the SEC's order, FCA received approximately $850,000 in fees from the Fund between May 2017 and April 2019, which was significantly more than the amount that FCA would have received from the Fund under a prior agreement and constituted more than 25 percent of FCA's total fee revenue from all clients during that period. The SEC's order finds that FCA and Hersch failed to provide clients invested in the Fund with full and fair disclosure of their conflicts of interest, including by failing to adequately inform clients that FCA received a substantial amount of fees from the Fund during this period, that such fees exceeded FCA's typical advisory fees on assets, and that these fees constituted a substantial percentage of FCA's revenues. The SEC's order further finds that FCA's disclosure in its Form ADV Part 2A Brochures made available to clients during this period contained inaccurate information about the arrangement FCA had with the Fund.

The SEC's order finds that FCA and Hersch violated Section 206(2) of the Investment Advisers Act of 1940. Without admitting or denying the findings, FCA and Hersch consented to cease-and-desist orders, censures, and payment of a $200,000 civil penalty on a joint and several basis.

The SEC's investigation was conducted by Brian A. Kudon and Wendy Tepperman and was supervised by Sheldon Pollock, all of the New York Regional Office. The examination that led to the investigation was conducted by Anthony Pennella, John Bulla, Rachel Lavery, and George DeAngelis, of the SEC's Division of Examinations.

## Related Materials

- Order - Florence Capital Advisors, LLC and Gregory A. Hersch

*Modified: Sept. 29, 2023*

# Exhibit D



**BrokerCheck Report**

# GREGORY ALAIN HERSCH
CRD# 3254629

| Section Title | Page(s) |
|---|---|
| Report Summary | 1 |
| Broker Qualifications | 2 - 3 |
| Registration and Employment History | 5 - 6 |
| Disclosure Events | 7 |

 Please be aware that fraudsters may link to BrokerCheck from phishing and similar scam websites, trying to steal your personal information or your money. Make sure you know who you're dealing with when investing, and contact FINRA with any concerns.
For more information read our investor alert on imposters.



**About BrokerCheck®**

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**
- BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.
- Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.
- **Where did this information come from?**
- The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
  o information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
  o information that regulators report regarding disciplinary actions or allegations against firms or brokers.
- **How current is this information?**
- Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.
- **What if I want to check the background of an investment adviser firm or investment adviser representative?**
- To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.
- **Are there other resources I can use to check the background of investment professionals?**
- FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.
- 

**Thank you for using FINRA BrokerCheck.**



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at
brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

www.finra.org/brokercheck                                                                                    User Guidance



## Customer Dispute - Settled

This type of disclosure event involves a consumer-initiated, investment-related complaint, arbitration proceeding or civil suit containing allegations of sale practice violations against the broker that resulted in a monetary settlement to the customer.

### Disclosure 1 of 1

| | |
|---|---|
| **Reporting Source:** | Broker |
| **Employing firm when activities occurred which led to the complaint:** | Florence Capital Advisors, LLC |
| **Allegations:** | Breach of Fiduciary Duty, Constructive Fraud, Fraud-Intentional Misrepresentation, Fraud - Concealment, Negligent Misrepresentation, Negligence. Allegations stem from investments in a private fund. |
| **Product Type:** | Other: Private Fund |
| **Alleged Damages:** | $1,400,000.00 |
| **Is this an oral complaint?** | No |
| **Is this a written complaint?** | Yes |
| **Is this an arbitration/CFTC reparation or civil litigation?** | Yes |
| **Arbitration/Reparation forum or court name and location:** | American Arbitration Association, New York |
| **Docket/Case #:** | 01-20-0015-9198 |
| **Filing date of arbitration/CFTC reparation or civil litigation:** | 12/16/2020 |

## Customer Complaint Information

| | |
|---|---|
| **Date Complaint Received:** | 12/16/2020 |
| **Complaint Pending?** | No |
| **Status:** | Evolved into Arbitration/CFTC reparation (the individual is a named party) |
| **Status Date:** | 04/27/2021 |
| **Settlement Amount:** | |
| **Individual Contribution Amount:** | |

## Arbitration Information

©2023 FINRA. All rights reserved. Report about GREGORY A. HERSCH.                                                       13



| | |
|---|---|
| **Arbitration/CFTC reparation claim filed with (FINRA, AAA, CFTC, etc.):** | American Arbitration Association, New York |
| **Docket/Case #:** | 01-20-0015-9198 |
| **Date Notice/Process Served:** | 12/16/2020 |
| **Arbitration Pending?** | No |
| **Disposition:** | Settled |
| **Disposition Date:** | 02/21/2022 |
| **Monetary Compensation Amount:** | $825,000.00 |
| **Individual Contribution Amount:** | $825,000.00 |
| **Broker Statement** | On December 16, 2020, FCA and its principal, Gregory Hersch, were named as parties in a private arbitration proceeding brought by a former client of FCA alleging breach of fiduciary duty, fraud, and misrepresentation, among other allegations. The claims in the arbitration proceeding stem from the former client's investments in FF Fund I, LP, a private investment fund, and the alleged fraudulent activities of its Managing Member, Andrew T. Franzone. FCA and Mr. Hersch believe the allegations to be without merit, and to be grossly inaccurate. FCA and Mr. Hersch elected to settle this matter in order to avoid protracted and costly litigation, and in order for Mr. Hersch to obtain assignment of the Claimant's interests in the liquidating trust of FF Fund I, L.P., which was a material consideration to Mr. Hersch in resolving this matter. |