O381FRAC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

      v.                                21 Cr. 446 (VSB)

ANDREW FRANZONE,

          Defendant.                  Conference
------------------------------x

                               New York, N.Y.
                               March 8, 2024
                               3:09 p.m.


Before:

                 HON. VERNON S. BRODERICK,

                               District Judge


                    APPEARANCES

DAMIAN WILLIAMS
      United States Attorney for the
      Southern District of New York
BY:  KIERSTEN A. FLETCHER, ESQ.
      Assistant United States Attorney

ELENA FAST, ESQ.
      Attorney for Defendant


GEORGE J. VILA, ESQ.
      Attorney for Defendant
      (Present Via Microsoft Teams)

O381FRAC

1        THE COURT:  Okay.  If I could ask, if we could go on

2   the record, I'll have counsel please identify themselves for

3   the record, beginning with the government.

4        MS. FLETCHER:  Good afternoon, your Honor.  Kiersten

5   Fletcher for the government.

6        THE COURT:  Okay.  Good afternoon.

7        MS. FAST:  Good afternoon, your Honor.  For

8   Mr. Franzone, Elena Fast.

9        THE COURT:  Okay.  All right.  Thank you, Ms. Fast.

10       And by Microsoft Teams.

11       MR. VILA:  Good afternoon.  George Vila from Miami,

12   Florida.

13       THE COURT:  Okay.  Good afternoon, Mr. Vila.

14       So I had asked to have this conference.  At the last

15   conference, I believe I appointed Ms. Fast to represent,

16   although I may not have, but what I will do is at least in the

17   interim, since you appeared at the last conference, you may

18   have had conversations with Mr. Franzone and done other things

19   in between, so obviously I'll approve you for that purpose.

20   But the principal purpose was to determine whether or not there

21   were going to be funds forthcoming, because it's my

22   understanding that Mr. Franzone would like to retain counsel.

23   And so Mr. Vila, I asked that Mr. Franzone's counsel in

24   connection with the bankruptcy proceeding also be present so I

25   could get a sense of, you know, what the potential or potential

1    prospect is with regard to Mr. Franzone being able to finance

2    private representation.

3              So I don't know where necessarily to start.  Perhaps,

4    Mr. Vila, there had been some discussion about the liquidation

5    of assets in connection with the bankruptcy that could possibly

6    be used by Mr. Franzone in connection with retaining counsel.

7    And so my first question was, well, (A) how likely is that, and

8    (B) even if the monies were liquidated or the materials were

9    liquidated, would Mr. Franzone be able to use them or would

10   they be monies that came back to an entity that Mr. Franzone is

11   affiliated with?  I don't know whether, Mr. Vila, you're able

12   to speak to that or not, but I'll leave it up to you, and then

13   if not, then I will determine the next step.

14             MR. VILA:  Judge, good afternoon.

15             What I can tell the Court is the following:  On

16   February 20th of this year, I entered an appearance on behalf

17   of four entities which are part of a bankruptcy procedure here

18   in Miami, Florida, in the Southern District of Florida.  One of

19   the entities is the general partner of the debt, okay?  I've

20   been trying to just wrap my arms around the whole case.  It's a

21   very complex procedure, complex case, very convoluted.  In

22   terms of assets, I know this:  I know that the fund had

23   invested in a company called Coreweave.  It had 250,000 shares.

24   Out of those 250,000 shares, the trustee for the bankruptcy

25   estate sold approximately 172,000 for $55 million.  My

O381FRAC

1    understanding is that those $55 million are sitting at the

2    trustee's trust account, and are there.  I have——my whole

3    purpose of me coming into this bankruptcy procedure was

4    basically to protect the claims that have been filed by the

5    five entities.  And that's pretty much as far as I can go.  I

6    have not done anything more than that.

7              And I'm——my background is I'm a criminal defense

8    attorney.  Because this was tied to a criminal case in New

9    York, Mr. Franzone thought that it would be a good idea to

10   bring someone with a criminal background to make sure things

11   are done correctly.  I'm in the process of retaining a

12   bankruptcy lawyer to help me out with the claims on behalf of

13   the four entities.

14             THE COURT:  Okay.

15             MR. VILA:  I can represent this to the Court.  The

16   investors will get more than their investments back.  The fund

17   seems not to be insolvent.  To the contrary, it's done amazing

18   because of the investment that was made in the company

19   Coreweave.

20             THE COURT:  But am I correct that Coreweave was in

21   connection with like a tender offer or something?  In other

22   words, that there was an actual equity event that became

23   available to the trustee that the trustee was able to take

24   advantage of and get approval for in the bankruptcy?

25             MR. VILA:  That is correct, Judge, and that's exactly

1  what happened.  However, there's still 67,000 shares there.  My

2  understanding is that this company would probably file or go

3  public soon, and those shares would be very, very, very

4  valuable.  What the trustee intends to do, I don't know.  I

5  haven't even spoken with the trustee yet.

6          THE COURT:  Okay.

7          MR. VILA:  So——

8          THE COURT:  All right.  And because, since the last

9  conference——I'll note just for the record, Mr. Vila, that our

10 last conference was actually on February 20th.  And so I had

11 been led to believe that something had been in the works in

12 terms of liquidation of funds.  I did take a look at the

13 bankruptcy court docket.  It's not clear to me, but I think a

14 number of things need to be worked out in the bankruptcy, which

15 I understand you're now getting involved in and need to

16 unravel.  But, you know, one of the concerns I had was, I knew

17 there were various entities that Mr. Franzone was affiliated

18 with or controlled or what have you, and so I wasn't sure that

19 even if the funds were forthcoming, whether or not he would be

20 able to utilize them himself in connection with retaining

21 counsel.  In reviewing the docket, although it appeared that

22 Mr. Franzone initially had counsel, I think when the SEC and

23 the U.S. Attorney's Office brought their respective matters, I

24 think it appears from the docket that counsel withdrew, and

25 it's not clear to me from the docket——again, I only took a look

1    at it earlier today for my brief perusal of the docket——that

2    the trustee is in agreement that the entities that might be

3    affiliated with Mr. Franzone would necessarily be entitled to

4    any distribution, and I'm not sure about that. I'm not a

5    bankruptcy lawyer. And literally I spent, you know, an hour or

6    two just flipping through the stuff.

7         What I want to do here is move this case forward. And

8    so, you know, based upon what I heard, it doesn't appear that

9    any funds are imminently available. The trial has been

10    scheduled for a while for June. I had indicated previously

11    that I wanted to hold that date so that any counsel who came in

12    should be prepared to try the case on that date, or close to

13    it, because I know, Ms. Fast, you had a professional obligation

14    around that time so that we might need to move the case a week

15    or two earlier, I think.

16         So what I would suggest——and then I'll hear from the

17    parties——what I'd like to do is appoint Ms. Fast to represent

18    Mr. Franzone, with the idea that Ms. Fast would be

19    Mr. Franzone's lawyer. If that's something that, for whatever

20    reason, is something that can't happen, I'd like to know that,

21    because it doesn't appear as if——and if I'm wrong about the

22    ability of Mr. Franzone to retain counsel, then I'd like to

23    know that also, because there may be other funds that aren't

24    necessarily tied up with the bankruptcy that could be

25    available. So that's my intention, so that we can move this

1    case along.  So Ms. Fast, I don't know whether you can, whether

2    you've had any conversations, whether you can add anything to

3    this, but I'll hear from you now.

4              MS. FAST:  Yes, your Honor.  Thank you.

5              THE COURT:  If I could ask you to pull the microphone

6    a little closer.

7              There you go.  Thank you.

8              MS. FAST:  So Mr. Vila was recently retained by

9    Mr. Franzone.  He's a private lawyer.  There's no CJA in

10   bankruptcy proceedings, as the Court is aware.

11             THE COURT:  Yes.

12             MS. FAST:  I've spoken with Mr. Franzone on several

13   occasions.  He tells me there is funds available that are not

14   coming from any legal actions, that would be put up by a third

15   party to retain private criminal counsel on Mr. Franzone's

16   behalf.  The issue that is happening with the trial being in

17   June is Mr. Franzone is being quoted two different fees for

18   when the case proceeds to trial, and the June trial date is

19   about triple or double the fee that would be quoted versus had

20   the case gone to trial later in the year.  And Mr. Franzone

21   does have the ability to retain the counsel of his choice if

22   the trial is pushed back and not quoted at the double or triple

23   the multiple.

24             THE COURT:  Okay.  Let me ask Ms. Fast, have you had

25   an opportunity to speak with this lawyer, or these lawyers?

O381FRAC

1    MS. FAST:  I have not, your Honor.  I'm relying on the

2  client's representation.

3    THE COURT:  Okay.  Do you know who they are?

4    MS. FAST:  Yes.  I believe it's Mr. Corozzo, who

5  previously entered a notice of appearance in the case.

6    THE COURT:  Oh, Mr. Corozzo did in fact file pretrial

7  motions.  In fact, I think Mr. Corozzo was Mr. Franzone's

8  attorney, I don't know for how long, but enough time that he

9  actually had a substantive involvement in the case.

10    MS. FAST:  Yes, your Honor.  And if I may add, it's my

11  understanding that Mr. Corozzo's mother passed away this week

12  and her funeral is scheduled for Saturday, so neither

13  Mr. Franzone nor myself thought it was appropriate to have

14  conversations about retention this week.

15    THE COURT:  No.  I think that's fine.  But what I want

16  to do is get to the bottom of what's going on, because a couple

17  of things.  As we all know, you know, being able to retain

18  counsel, a criminal lawyer, doesn't mean that you're going to

19  be able to continue to have that lawyer represent you.  If

20  Mr. Corozzo is representing—and again, I don't want to get

21  into sort of the nature of the retention, but if he's

22  representing that for X, he will basically represent

23  Mr. Franzone through trial, okay, as opposed to, you give me a

24  retainer and I'll represent you and then you'll pay me a little

25  bit more, because I think that may have been what happened

O381FRAC

| | |
|---|---|
| 1 | previously, where I relieved Mr. Corozzo as counsel.  So I |
| 2 | think that what I would need, quite frankly, is to hear |
| 3 | something sort of definitive, because it wouldn't do |
| 4 | Mr. Franzone any good if he has an attorney of his choice and |
| 5 | that attorney only lasts until, you know, right before trial. |
| 6 | MS. FAST:  Understood, your Honor. |
| 7 | THE COURT:  And Ms. Fast, I think this is our first |
| 8 | case together—— |
| 9 | MS. FAST:  Yes, your Honor. |
| 10 | THE COURT:  ——but I can tell you, my experience with |
| 11 | the Criminal Justice Act lawyers is that they are of the |
| 12 | highest quality in representing clients in criminal matters in |
| 13 | this court.  And I'm not saying, Mr. Franzone, that Mr. Corozzo |
| 14 | isn't.  I have not had Mr. Corozzo in my courtroom except for |
| 15 | the filing of the motions, and they seem all to be |
| 16 | professionally done, so I'm not in any way commenting on that. |
| 17 | I'm just saying, I want to move this case forward. |
| 18 | So, Ms. Fast, the first question is:  Are you saying |
| 19 | that with regard to the earlier trial that the finances that |
| 20 | Mr. Franzone has would not cover that?  I'm just trying to |
| 21 | figure out what actually is going on here, quite frankly. |
| 22 | MS. FAST:  Yes, your Honor.  My understanding——and |
| 23 | this is based on my conversations with Mr. Franzone——is that |
| 24 | the trial has different fees associated with it, and it's based |
| 25 | on the attorney's need to put aside his other cases and |

O381FRAC

1  prioritize this matter over everything else his firm has going

2  on.

3          THE COURT:  Okay.

4          MS. FAST:  So the June trial date, if that's the date

5  that stays, would not be feasible for retained counsel to do

6  solely because Mr. Franzone is unable to afford this premium

7  double or triple fee——

8          THE COURT:  Sure.

9          MS. FAST:  ——for the case to go in June.

10         THE COURT:  Okay.  All right.  Look, I think what

11 makes sense is, Ms. Fast, I'm still appointing you, and so the

12 time that you spent on the matter, you should obviously submit

13 your vouchers.  But I do think it makes sense for me to hear

14 again from Mr. Corozzo concerning this, because, again, my

15 concern is that Mr. Corozzo will come in, and again, I don't

16 typically get involved in any way, shape, or form with regard

17 to an attorney and their retention and the like, but in

18 particular Mr. Corozzo has been in this case and then was

19 relieved, and now he may be coming back, so I feel it's

20 incumbent upon me to figure out whether he's in it for the long

21 haul——in other words, whether there's financing for him to be

22 in it for the long haul or we're just talking about a

23 retention.  And I know that you haven't been in touch with

24 Mr. Corozzo, but I would want to hear from him about that.  And

25 I'll have to think about how much detail I get into with regard

1   to the retention because my aim, my main aim is to make sure

2   that Mr. Franzone has counsel and that counsel will be able to

3   be prepared for trial rather than having the case move in sort

4   of fits and starts.

5           So I'll issue an order.  And I don't believe, since I

6   relieved Mr. Corozzo, that he's continued to receive ECF

7   notifications, but I was going to put it over for a week.  I

8   could put it over for two weeks.  I just don't know what

9   Mr. Corozzo's situation is.

10          Why don't we do this.  I don't know what his schedule

11  is like, but I will put it over for two weeks.  We'll put it

12  over for Friday, whatever that date in March is.

13          THE DEPUTY CLERK:  22nd.

14          THE COURT:  22nd at 3 p.m., at which time I'd like

15  Mr. Corozzo to be present.  And again, obviously, if he has

16  other obligations, we can move that earlier in the week as

17  needed.

18          Mr. Vila, obviously you can continue the process that

19  you've undertaken in terms of the bankruptcy.  And you're

20  absolutely right.  I mean, there are 681 entries in the

21  bankruptcy.  So I completely understand what you're saying in

22  terms of—if that's a measure of complexity, that's one

23  measure.  Also, there are a number of different entities that

24  are involved.  So I'll leave that to you, and if there's a

25  bankruptcy lawyer retained to, you know, go through that, to

O381FRAC

1    figure that out, or to speak to the trustee to figure out where

2    things stand.  But I do want to move this case forward.

3              So I'll put this over until Friday, March 22nd, at

4    3 p.m.  I'd ask Ms. Fast, again, if I could ask you to make

5    sure that Mr. Corozzo gets the notification.

6              MS. FAST:  Yes, your Honor.  Thank you.

7              THE COURT:  And in the interim, I'm not sure if I need

8    to fill out paperwork to appoint you, but I will appoint you

9    *nunc pro tunc*, dating back to previous to that.

10             And Ms. Fletcher, yes.  You were rising.

11             MS. FLETCHER:  Yes, your Honor.  Just to maybe make a

12   couple of points and seek clarification from the Court.

13             THE COURT:  Yes.

14             MS. FLETCHER:  As I think your Honor knows——and the

15   government shares the Court's view that this case needs to move

16   forward.  This case has been pending since early 2021.  Your

17   Honor set the June trial date last September.

18             THE COURT:  Yup.

19             MS. FLETCHER:  And the issues surrounding

20   Mr. Franzone's desire to/wish to/ability to/inability to retain

21   counsel have been going on since November.  We are I think

22   getting to the point where, if there's any uncertainty about

23   who his counsel is, there may be a real issue with keeping the

24   trial date.  I think we are probably now at the point where,

25   were Ms. Fast to be his lawyer, we would start talking about

1    whether there's a pretrial disposition we could reach, what

2    type of pretrial disclosure deadlines we might have mutually

3    agreed to and propose to the Court.  And so the point of

4    clarification, your Honor, is, is your Honor's present

5    intention to keep the June trial date and to move it up to

6    accommodate Ms. Fast in the event that Mr. Corozzo does not

7    come in?  Or—

8        THE COURT:  Oh, the answer would be yes, unless

9    there's a reason that I shouldn't do that.  And again,

10   Ms. Fast, I don't recall, but I thought that you had a trial

11   obligation in July or—and I don't remember.  But look, I will

12   take my cue from the parties.  Mr. Franzone is at liberty.  I

13   do want to move this case forward, to be quite frank.  I'm

14   somewhat troubled by this bouncing around of counsel.  I think

15   based upon my reading of the bankruptcy docket that there isn't

16   a prospect in the short term of any funds coming from the

17   bankruptcy, which I thought might be the prospect.

18       So Ms. Fletcher, I would want to try and keep the June

19   date, but I really want to hear from Mr. Corozzo.  I guess my

20   initial intention was, yes, if Mr. Corozzo doesn't come in, I

21   would like Ms. Fast to do that, unless she can't, in other

22   words, just based upon her schedule.

23       MS. FLETCHER:  So, your Honor, well, first of all,

24   with respect to the bankruptcy proceeding, I am also not a

25   bankruptcy lawyer, but I share your Honor's conclusion that

1  there is at most significant uncertainty about whether funds

2  are to be forthcoming from the bankruptcy proceeding, and so I

3  would agree that it's not wise to count on those funds in

4  assessing whether Mr. Franzone is or is not going to be able to

5  retain counsel.

6        My understanding from the last proceeding—which I was

7  not present for but my colleague attended—was that Ms. Fast

8  was available to do a trial in June but not on June 10th, which

9  is I think the date we've currently set for trial, but that she

10  would be available June 3rd.  And so if the Court is inclined

11  to keep that date, what the government would propose is that

12  that date be set as the trial date, and if Mr. Corozzo is

13  retained and comes in, that he be prepared to proceed on that

14  date, unless the Court is advised of facts that the Court

15  doesn't currently have.  And with that date, I think the

16  government will be able, either in consultation with Ms. Fast

17  or in consultation with Ms. Fast and Mr. Corozzo, discuss what

18  a pretrial disclosure schedule might look like and discuss

19  whether there's any possibility of a disposition here.  We're

20  somewhat powerless to do that and have been somewhat powerless

21  to do that for some time, given the fluctuating counsel.

22        THE COURT:  Yes.  So let me ask first, Ms. Fast,

23  June 3rd, is that still something that you can do in light of

24  your professional obligations and otherwise?

25        MS. FAST:  Your Honor, I'm available to start on

1    June 3rd, but I think the better question is will I be ready to

2    proceed.  The discovery in this case, to inform your Honor, is

3    412,000 documents.  Ms. Colson and I have spoken.  We prepare

4    for trial very differently.  All the files are in what's called

5    a Casepoint, where everything is electronic and you can insert

6    tabs and mark what's relevant, what's important.  I'm a tabber.

7    Ms. Colson is not.  So when I got the shared drive from her,

8    there was absolutely nothing in the documents that identified

9    what I should be focusing my efforts on.  And the government

10   has been very kind to offer me their best "hits" as to what is

11   the best evidence against Mr. Franzone, but the issue I have is

12   I don't understand enough about the case without actually

13   sitting down and going through the discovery and developing a

14   defense.  And Ms. Colson has been very generous with her time

15   and what she's told me about the case, and I do believe she can

16   get me up to speed, but it would be her assessment of the case

17   and not my assessment.  And what I don't want to do is to

18   commit to the Court that I'll be ready to go and then not do a

19   phenomenal job on Mr. Franzone's behalf because I don't have

20   the time to actually review everything properly.

21        THE COURT:  Sure.  And what I'll say is, obviously, it

22   should be your assessment, if you're Mr. Franzone's lawyer.

23   But let me ask then the second question, which is, you are now,

24   from my perspective, Mr. Franzone's lawyer.  Mr. Corozzo hasn't

25   filed a notice, you know, no one has, but the question I have

O381FRAC

1   is whether you would be authorized—

2           And Ms. Fletcher, to your point, no, it sounds like

3   June, even if Ms. Fast can stay in, based upon what I've heard,

4   that I would have concern with going forward on that date.  So

5   that date is going to slip.  I don't know to where.  And

6   Ms. Fast, I don't know whether you've had an opportunity to

7   speak to Mr. Franzone about whether you have the authority to

8   engage in discussions with the government concerning—and

9   again, the pretrial submissions, obviously that's something

10  that I think we can put on the back burner, but with regard to

11  potential dispositions, I think that's something that, you

12  know, I'd like to move forward on, because that will decide

13  obviously whether and when a trial might be.  So Ms. Fast, I

14  understand what you're saying, and I'm not going to put you in

15  a position where you have concerns about your own ability to

16  assess the case yourself in terms of what that means, and it

17  may mean you still need time to do that to fruitfully engage

18  the government in any plea discussions.  But my view is you're

19  Mr. Franzone's attorney right now.  But until we meet with

20  Mr. Corozzo, I don't know what is going to come of that.  Well,

21  this is what I'll say.  It's two weeks.  The trial is not going

22  to be in June based upon what I've heard, Ms. Fast.  And again,

23  I don't know what exactly the differential is, but at least

24  from what I'm hearing—but I'll have to hear from

25  Mr. Corozzo—is that if it's pushed out, that there would be

1    funds available for Mr. Corozzo to come in, try the case.

2    That's what I'm hearing.  I'm not sure that that's necessarily

3    the case, quite frankly.  I think what may be going on is there

4    may be money for a retention but there may not be any money

5    thereafter, and there may be promises of money, but that may

6    not be, just because of what has happened so far.  And the

7    trial had been scheduled for over a year.  And so I recognize,

8    though, that it's not going to be in June, no matter what, it

9    seems like.  Well, no, not it seems like.  It's not going to be

10   in June.

11           But Ms. Fletcher, you were rising to say something.

12           MS. FLETCHER:  Now that your Honor has made clear that

13   the trial is not going to be in June, the government was going

14   to inquire as to when the Court might next have availability so

15   that to the extent Mr. Corozzo is going to come in, we could

16   discuss dates and terms amongst ourselves before the next

17   conference.

18           THE COURT:  Sure.  Monday, November 4th, or Tuesday,

19   November 12th.

20           MS. FLETCHER:  Both fine for the government.  But we

21   can discuss that with—

22           THE COURT:  Yes.  And look, you know, in looking at my

23   trial calendar, I've got trials scheduled during the summer,

24   and I think that sounds like it would be too soon anyway, so

25   that's why we settled on those dates.  So that's something to

O381FRAC

1    focus on with Mr. Corozzo.  And I don't know whether, Ms. Fast,

2    you know your schedule out that far, or do you know whether

3    you're available during that time frame?

4           MS. FAST:  I don't think I have any conflicts, your

5    Honor.  I'll certainly speak with the government and hopefully

6    get in touch with Mr. Corozzo and get his availability if he's

7    coming in.

8           THE COURT:  Okay.  All right.  So let's plan on coming

9    back on March 22nd.  And I think I have excluded time through

10   the trial, which was June 10th, so why don't we keep that

11   exclusion right now, with the understanding that trial date is

12   still something that's on the calendar.  But in any event, in

13   light of the circumstances, I would exclude the time anyway,

14   between now and certainly March 22nd, from the time within

15   which Mr. Franzone would have to be brought to trial.  And of

16   course that time is necessary so we can figure out counsel

17   representation as well as the issue of the motions, as I had

18   mentioned during our last conference.  But we'll come back at

19   3:00 on the 22nd, at which time I'm going to want to inquire in

20   all likelihood about—not necessarily any detail about what the

21   fees might be, but whether or not we're talking about a

22   retention that includes basically through trial or whether

23   we're talking that monies will be paid in installments, in

24   which case I would have some further questions about whether

25   there are going to be really the funds needed to actually try

O381FRAC

1    the case in November.

2           Let me ask, is there anything else that we should

3    discuss today?

4           MS. FLETCHER:  Your Honor, the only other open item

5    from the last conference that I was made aware of is that I

6    believe there was a discussion about the pending motions and

7    the desire on behalf of Mr. Franzone to make an additional

8    submission.

9           THE COURT:  That's right.  Yes.  I think I had

10   mentioned, because I don't know what the nature of that motion

11   is, I think I had suggested that perhaps Mr. Franzone's

12   counsel——Ms. Fast, since you're, again, his attorney, I don't

13   know whether Mr. Franzone has shared with you the motion or

14   not?

15          MS. FAST:  I've seen the supplement, your Honor.

16          THE COURT:  Okay.  All right.  So I'd ask that you

17   discuss with Mr. Franzone the nature of that motion and

18   whatever your views are in connection with that and to

19   determine whether you believe that's something that, as his

20   attorney, you would file.

21          Yes.

22          MS. FLETCHER:  I'm sorry, your Honor, I keep standing

23   seeking clarification.  Just so I understand, is this a new

24   motion or is it a supplement to the existing motions to

25   suppress?

1          THE COURT:  I don't know.  I mean, Ms. Fast described

2     it as a supplement, but that could mean supplement meaning an

3     additional motion as opposed to supplementing a prior motion.

4          Ms. Fast, is it a new—and by new, I mean a new legal

5     theory, in other words, not dealing with the search warrants?

6          MS. FAST:  Your Honor, I believe it addresses the

7     search warrants.  And speaking with Ms. Colson, I believe your

8     Honor proposed a set of questions that your Honor sought

9     answers to, and I believe these are the answers to your Honor's

10    questions.

11         THE COURT:  I see.  Yes.  Well, it didn't escape me

12    that there were certain questions that I had asked for which I

13    didn't get responses to.  So that's helpful in terms of what

14    that would be.  So I still think, Ms. Fast, as Mr. Franzone's

15    attorney, you should review it and come to your own assessment

16    and speak with Mr. Franzone about that, and that will be

17    another topic that we'll discuss at the next conference.

18         So a couple of things.  I think, number one, were

19    Mr. Franzone to submit this on his own, there's clearly a

20    difference between, you know, a client submitting something, in

21    particular when they're represented.  Quite frankly, if you're

22    represented, I wouldn't allow for a defendant to do that.  But

23    there I think would be implications for Mr. Franzone were he

24    just to submit something in writing that later on certainly

25    could be used, you know, in connection with the trial.  But in

O381FRAC

1   any event, I don't know exactly what those things are.  The

2   questions I was asking were certainly substantive and some

3   specific, with regard to what things were going on, so, you

4   know, I'll leave, Ms. Fast, that to you and to Mr. Franzone to

5   discuss and then we'll reconvene.  But it is helpful to know

6   that it merely is sort of literally a supplementation, in other

7   words, responding to questions I had with regard to the pending

8   motion as opposed to a new motion.

9           Okay.  Anything else from the government?

10          MS. FLETCHER:  No, your Honor.  Thank you.

11          THE COURT:  All right.  Anything, Ms. Fast?

12          MS. FAST:  No, your Honor.  Thank you.

13          THE COURT:  All right.  Mr. Vila, anything from

14   Florida?

15          MR. VILA:  Your Honor, do you want me to be back on

16   the 22nd for that hearing or——

17          THE COURT:  You know, Mr. Vila, it may make sense just

18   so we can close the loop on any issues relating to the

19   bankruptcy.  If there is any movement down there, I just want

20   to close that out.  I'm not saying there needs to be any

21   movement, I'm not saying that I need to have any additional

22   clarity, because I think I'm going a different way, because

23   from my assessment, unless something is pointed to me to show

24   that there's going to be funds that are going to be coming out

25   of the bankruptcy, sort of imminently, because there may be a

O381FRAC

1　situation where the distribution to any of the folks who are

2　entitled to get money may not be for a while, even though they

3　have the $55 million and I think I read that the other shares

4　may be worth as much as $20 million or something like that,

5　that money may not——

6　　　　MR. VILA:  Well, you can——

7　　　　THE COURT:  That money may not be distributed for I

8　don't know how long, and I haven't looked at what the plan is.

9　And I don't want to get into that.  But if you have some

10　additional information concerning distribution date and

11　entitlement of any of the entities that you represent that

12　might result in Mr. Franzone getting funds, I'll hear from you.

13　So if you could appear, I would appreciate it.  And we will

14　send you another Microsoft Teams dial-in information on that.

15　All right?

16　　　　MR. VILA:  Perfect.  That's no problem.

17　　　　THE COURT:  All right.

18　　　　MR. VILA:  Great.

19　　　　THE COURT:  Well, thank you, everyone.  We made some

20　progress.  All right.  Thank you very much.  We'll stand

21　adjourned.

22　　　　MS. FAST:  Thank you.

23　　　　MS. FLETCHER:  Thank you, your Honor.

24　　　　MR. VILA:  Thank you.

25　　　　　　　　　　　　　　o0o