UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA                    :

     -against-                                      :        21 CR 446 (VSB)

ANDREW FRANZONE                             :

                                                                                 :
-------------------------------------------------------------X

# DEFENDANT'S OPPOSITION
## TO GOVERNMENT'S MOTIONS *IN LIMINE*
## AND CROSS-MOTION
## TO STRIKE THE GOVERNMENT'S SUPPLEMENTAL MOTION

Joseph R. Corozzo
Angela D. Lipsman
Rubinstein & Corozzo, LLP
*Attorneys for Defendant*
*Andrew Franzone*
260 Madison Avenue, 22d Fl.
New York, New York 10016
(212) 545-8777 (ph)
(917) 722-8206 (fax)
jcorozzo@rubcorlaw.com
alipsman@rubcorlaw.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 3

FACTS .......................................................................................................................... 3

DISCUSSION ............................................................................................................... 6

   I. The Government's First MIL. ............................................................................... 6

      A. Defendant's Intent. ........................................................................................ 6

      B. Evidence that the Investors Profited Is Admissible. .......................................... 9

      C. The Government's Motion to Preclude Evidence or Arguments

      that Certain Investors Were Not Defrauded Should be Denied. ........................... 11

   II. Government's Second MIL and Government's I(D) MIL. ................................... 13

   III. Gov's Third MIL – Evidence of Defendant's "Substantial Personal Expenses." ............... 14

   IV. The Government's Fourth MIL. ...................................................................... 16

      A. The SEC Order. ........................................................................................... 16

      B. Civil Litigations ........................................................................................... 18

         (i) The Third Party Complaint of Zeiger, as Trustee of the Linden West Trust, v. Hersch. ................................................................................................. 18

         (ii) The Settlement Between Gregory Hersch and Blake Mallen. ..................... 18

      C. Cross-Examination Concerning Drug Use Is Permissible. .............................. 21

   V. The Government's Fifth MIL. ........................................................................... 21

      A. Background Information. ............................................................................... 21

      B. Sympathy Pitch. .......................................................................................... 22

   VI. Cross-Motion to Strike. ................................................................................. 23

   CONCLUSION .................................................................................................... 25

PRELIMINARY STATEMENT

Defendant Andrew Franzone ("Franzone") submits this Memorandum of Law in Opposition to the Government's Motions *in Limine*, ECF # 161 and in Support of a Cross-Motion to Strike the Government's untimely motion, ECF # 162.

FACTS[1]

Mr. Franzone is charged with defrauding everyone who was an investor in FF FUND I, L.P. (hereafter the "FF FUND" or the "Fund") as of January 21, 2021. On January 12, 2022, defense counsel requested the U.S. Attorney's Office provide a list of the alleged victims in the case at bar. In response, the then-assigned Assistant United States Attorney wrote, "The victims are any investors in FF Fund or their representatives, which are included as Ex. 2 to the amended disclosure statement in the bankruptcy proceeding. See attached," Ex. A - 1/12/22 Email from Gov. See also Indictment ¶ 7 (charging that Mr. Franzone fraudulently "induced over 100 investors to invest more than $40 million in FF Fund").[2]

Attached to the 1/12/22 Email from the Government was the referenced First Amended Disclosure Statement for First Amended Chapter 11 Plans of Reorganization ("Amended Disclosure Statement") - Doc. # 248 from In re FF Fund I, L.P. et al, 19-22744 (BKC) (LMI) (Bankr. S.D. Fla.) (hereafter the "Bankruptcy Case"). The attachment to the Government's

---

[1] The defendant denies the Government's allegations against him. As it is the Government's burden to prove the defendant guilty beyond a reasonable doubt at trial, we limit our discussion of the facts to those pertinent to the Government's Motions *in Limine.* Nothing in this Opposition should be construed as a concession of any of the Government's allegations or arguments.

[2] Rather than repeat the facts set forth in Defendant's Motions *in Limine*, Mr. Franzone incorporates by reference Defendant's Motions *in Limine*, ECF # 158. Defendant's Motions explain, *inter alia,* that there actually are no identifiable victims in the case at bar.

Email, at Exhibit 2 to the Amended Disclosure Statement, lists the limited partners in the FF FUND and their interests in the Fund as of January 21, 2021.[3]

(Notably, this list of the Government's alleged victims does not include the Linden West Trust or the HKW 2018 Trust, both of which had forfeited their interests in the FF FUND by that time. Amended Disclosure Statement p. 16. Based on the Government's Email, however, the Government includes among the alleged victims *Mr. Franzone* himself, as the sole representative of several of the listed limited partners, meaning that Mr. Franzone is charged with allegedly defrauding himself and others.)

On September 29, 2023, the Securities and Exchange Commission ("SEC") entered an Order *In the Matter of Florence Capital Advisors, LLC and Gregory Hersch*, Administrative Proceeding File No. 3-21771 (hereafter "SEC Order"), attached as Exhibit B. The Government refers to this as a Settlement Agreement. Gov's Motions p. 18 – 19.

Referring to the SEC Order as a Settlement Agreement is an oversimplification at best, a misrepresentation at worst. While the SEC Order does set forth the SEC's acceptance of Offers of Settlement from Florence Capital Advisors, LLC ("FCA") and Gregory Hersch,[4] it also sets forth the agency's Findings of Fact in the SEC's investigation against FCA and Gregory Hersch. Exhibit B – SEC Order, p. 2 – 6 (setting forth the agency's findings). Among the SEC's findings are that "FCA and Hersch did not adequately disclose to clients the conflicts of interest FCA had in recommending and advising on investments in the Fund… Among other things, Hersch and

---

[3] We are not attaching the Government's list of alleged victims, which is already publicly available through PACER at Bankruptcy Case Doc # 248, pages 80 – 82. However, we incorporate this list of alleged victims by reference herein, and we will submit same to the Court upon request.

[4] We will continue to refer to Gregory Hersch by his full name so that there will be no confusion with his father, the late Dennis Hersch, who had been both an investor in the FF FUND, as well as the trustee of the Linden West Trust.

FCA failed to adequately inform clients that FCA received a substantial amount of fees from the Fund during the Relevant Period, that such fees exceeded FCA's typical advisory fees on assets, and that these fees constituted a substantial percentage of FCA's revenues." Id. ¶¶ 15 – 16.

The Third Party Complaint against Gregory Hersch and others in Florence Capital Advisors, LLC v. Zeiger v. Hersch et al., 24 CV 1094 (hereafter "Zeiger Complaint"), which the Gov. refers to in their Motions at p. 20 – 21, involves the same underlying facts as the findings in the SEC Order. Indeed, the SEC Order is annexed to the Zeiger Complaint.

On April 9, 2022, one of the alleged victims from the Government's list, the Blake Mallen 2013 Trust (hereafter "Blake Mallen"), transferred their entire interest in the FF FUND to Government witness Gregory Hersch. Exhibit C – Transfer of Claim Other Than for Security, Bankruptcy Case Doc. # 567. This gave Gregory Hersch Blake Mallen's entire interest in the FF FUND portfolio, including but not limited to in CoreWeave, Inc. ("CoreWeave").

Gregory Hersch was on the Board of Directors of CoreWeave from January 2019 – October 2023, meaning that he was on CoreWeave's Board of Directors at the time that he acquired Blake Mallen's interest. Exhibit D – Gregory Hersch LinkedIn Profile – Projects. As a member of the Board of Directors, Gregory Hersch would have had access to information regarding the CoreWeave investment that Blake Mallen and other members of the public would not have had. The Government attempts, in a footnote, to preclude any line of examination on this. Gov. MIL fn. 5.

As we will discuss, the Government's Motions *in Limine* are incredibly broad and lacking in specifics. For example, the Government seeks to admit "evidence of the defendant's substantial personal expenses," Gov's MIL p. 1, without specifying *what* personal expenses the Government seeks to offer into evidence. "Personal expenses" could be construed to mean all

expenses regardless of who paid for them. For example, Mr. Franzone had been living at the Westin Beach Resort & Spa for a year at the time of his arrest. Aff. of Defendant's Mother, ECF 32-1, ¶ 3. In support of one of defendant's pending motions, Mr. Franzone's mother submitted an affidavit indicating that *she* periodically phoned the hotel to pay for the defendant's stay. Id. ¶ 3. While the Government has not identified this particular expense as one that it seeks to admit, it would fall under the Government's broad description of "personal expenses."

DISCUSSION

I. The Government's First MIL.

A. Defendant's Intent.

The Government moves to preclude any evidence or arguments that Mr. Franzone "intended for everyone to profit from his... investments in the long run,"[5] on the theory that Mr. Franzone had the requisite intent to defraud so long as he "intended to deprive [victims] of the full information they needed to make refined discretionary judgments," Gov's MIL p. 7 (quoting United States v. Leonard, 529 F.3d 83, 91 – 92 [2d Cir. 2008]).

We will start by addressing the Government's misunderstanding of the element of intent. Leonard, 529 F.3d 83, and United States v. Gole, 21 F. Supp. 2d 161 (E.D.N.Y. 1997), which the Government relies on, are no longer good law. These cases applied the right to control theory (i.e. the right to control assets), under which a defendant was guilty of fraud if he intentionally deprived others of "potentially valuable economic information necessary to make discretionary economic decisions," Ciminelli v. United States, 143 S. Ct. 1121, 1125 (2023). See United States

---

v. Levis, 488 Fed. Appx. 481, 486 (2d Cir. 2012) (indicating that in Leonard the Second Circuit applied the right to control theory).

In erroneously alleging that the *mens rea* issue is whether Mr. Franzone had "'a good faith belief that a representation was true'"[6], the Government has overlooked that the United States Supreme Court has now banned the right to control theory. Ciminelli, 143 S. Ct. 1121. The jury therefore cannot convict Mr. Franzone on the basis of intentionally depriving investors of *information* to make investment decisions. Rather, the jury would have to find beyond a reasonable doubt that Mr. Franzone intended to deprive the investors of a tangible asset, i.e. money. Id.

In other words, the Government must prove beyond a reasonable doubt that Mr. Franzone intended to economically injure the FF FUND's investors.

The law is clear that Mr. Franzone is permitted to argue and introduce evidence that he never intended to harm the investors (which include himself) ***at all***. This defense negates the element of intent (an element of both counts), which the Government is required to prove beyond a reasonable doubt. In a mail fraud case, United States v. Regent Office Supply Co., 421 F.2d 1174 (2d Cir. 1970), much like the case at bar, the Government "is arguing: that these false representations, in the context of a commercial transaction, are *per se* fraudulent despite the absence of any proof of actual injury… The government asks us to infer some injury from the mere fact of the falseness of the representations and their connection with a commercial transaction," 421 F.2d at 1181 - 182. The Second Circuit rejected this argument. "But this does not mean that the government can escape the burden of showing that some actual harm or injury was *contemplated* by the schemer… the purpose of the scheme 'must be to injure, which

---

[6] Gov's MIL p. 6 (citation omitted).

doubtless may be inferred when the scheme has such effect as a necessary result of carrying it out,'" <u>Regent Office Supply Co.</u>, 421 F.2d at 1180 – 181 (emphasis in original) (citations omitted).

Here, as in <u>United States v. Starr</u>, 816 F.2d 94 (2d Cir. 1987), "the government appears to lose sight of [an important distinction] in this case. Misrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution. Instead, the deceit must be coupled with a contemplated harm to the victim." 816 F.2d at 98. Thus, the Second Circuit found there was no intent to defraud in <u>Starr</u>, where, despite the defendants making misrepresentations to their customers, there was no evidence of an intent to deprive defendants' customers of the benefit of the bargain; "there was no discrepancy between benefits 'reasonably anticipated' and actual benefits received," <u>Id.</u> at 99.

While the parties are not yet submitting their proposed requests to charge, because Mr. Franzone's defense includes that he had no intent to harm his fellow investors <u>at all</u>, rather than "in the long run", the Government is wrong in asking for an instruction "that the defendant's belief that victims would eventually profit or recoup losses is irrelevant," Gov's Motion p. 6. This so-called "no ultimate harm charge" is improper where here, as in <u>United States v. Rossomando,</u> 144 F.3d 197, 202 – 03 (2d Cir. 1998), the "defense was not that defendant thought that there would be no ultimate harm, but rather that defendant thought that there would be no harm at all," <u>Leonard,</u> 529 F.3d 83, 91 (explaining <u>Rossomando</u>).

Wherefore, the Court must not preclude evidence or argument that Mr. Franzone had no intent to cause economic harm to investors in the first place under the guise of precluding a hypothetical defense that the defendant had the requisite intent to cause economic harm but intended to cure said harm.

8

B. Evidence that the Investors Profited Is Admissible.

The Government argues that evidence that the investors *profited* from their investments in the FF FUND rather than experienced a loss should be precluded, on the theory that this evidence is "irrelevant" and "immaterial." Gov's MIL p. 8 – 9.

Specifically, CoreWeave, one of the businesses that *Mr. Franzone* invested the FF FUND's money in prior to the Chief Restructuring Officer ("CRO") taking control of the FF FUND in September 2019, and to the CRO filing for Chapter 11 in September 2019, turned out to be an immensely profitable investment. Thanks to *Mr. Franzone's* investment of FF FUND monies in CoreWeave, the investors listed on the Government's list of alleged victims[7] have profited from their investment in the FF FUND[8]—a fact that the Government, inexplicably, appears to credit to the CRO, as if the CRO had had any hand whatsoever in either selecting the CoreWeave investment or in increasing the value of the CoreWeave investment. Gov's MIL p. 8 (misleadingly arguing that "the Fund's Chief Restructuring Officer was able to monetize one of the Fund's illiquid investments").[9]

---

[7] Bankruptcy Case Doc. 248, p. 80 – 82.

[8] With the sole exception of alleged victim Blake Mallen 2013 Trust, which transferred its interest in the FF FUND to Government witness Gregory Hersch prior to reaping profits from the investment in CoreWeave. The Government has moved to preclude cross-examination into the circumstances of said transfer (i.e. that Gregory Hersch was on the Board of Directors of CoreWeave at the time, and therefore had access to inside information about the value of the CoreWeave investment).

Regardless, Blake Mallen is not a "victim" in the case at bar:

(a) because Mr. Franzone did not make any misrepresentations to Blake Mallen,

(b) because the transfer of Blake Mallen's interest to Government witness Gregory Hersch means that he has assumed Blake Mallen's stead as an alleged victim and

(c) because any alleged harm to Blake Mallen was proximately caused by the intentional wrongdoing of Gregory Hersch, not by any fraud on Mr. Franzone's part. Wherefore, Mr. Franzone continues to maintain that there are no identifiable victims in the case at bar.

[9] The Government keeps harping on the fact that the FF FUND is in bankruptcy, conveniently ignoring the fact that the initial plan in the Bankruptcy Case was to *reorganize* the FF FUND, **not** to liquidate it. As per the Defendant's MIL, at the time of Mr. Franzone's arrest, a hearing

Again, in the wake of <u>Ciminelli,</u> the Government must prove beyond a reasonable doubt that the defendant had the intent to deprive the investors of tangible assets, as they cannot proceed on the right to control theory (despite relying on said theory in their MIL).

Evidence that the investors profited as a result of *Mr. Franzone's* management of their investments is admissible because it is evidence that Mr. Franzone lacked said intent. <u>United States v. Foshee</u>, 578 F.2d 629, 632 (5th Cir. 1978) (evidence of no loss because checks were paid was admissible as to the issue of intent to defraud).

According to the Second Circuit, there is "a liberal policy in admitting evidence directed towards establishing… state of mind. No evidence which bore even remotely on this issue should have been kept from the jury, unless it interjected tangential and confusing elements which clearly outweighed its relevancy," <u>Vinieris v. Byzantine Maritime Corp.</u>, 731 F.2d 1061, 1064 (2d Cir. 1984) (citing <u>United States v. Brandt</u>, 196 F.2d 653, 657 [2d Cir. 1952]) (other citations omitted). <u>See also</u> <u>United States v. Litvak</u>, 808 F.3d 160, 190 (2d Cir. 2015) (citing <u>Brandt</u> and <u>United States v. Collorafi</u>, 876 F.2d 303, 305 [2d Cir. 1989]) (same).

Here, none of the FRE 403 considerations substantially outweigh the probative value of the investors profiting from Mr. Franzone's management of the FF FUND portfolio as to the issue of whether Mr. Franzone had the intent to harm investors. (A difficult burden for the Government given that Mr. Franzone was and still is the sole representative of several investors).

Wherefore, the Government's motion to preclude evidence that the alleged victims actually profited from their investments should be denied. In the alternative, if the Court precludes evidence of the investors' gain, the Court must also preclude any evidence of loss.

---

had been scheduled to confirm the reorganization plan. Only after Mr. Franzone was arrested and detained did the CRO first declare the CRO's intent to liquidate the FF FUND instead.

Otherwise, if the Government introduces evidence of loss or argues that there was a loss, Mr. Franzone must be permitted to rebut same. <u>United States v. Coscia</u>, 2015 U.S. Dist. LEXIS 141584, *3 - 4; 2015 WL 6153602 (N.D. Ill. Oct. 19, 2015) (because evidence of "'loss is relevant… to demonstrate a defendant's knowledge or intent to commit fraud'… to the extent that the Government uses victim testimony to prove intent, Coscia may cross-examine witnesses about whether they… 'got the benefit of their bargains'") (citations omitted).

Simply put, the Government cannot have it both ways. Just as loss would be relevant to intent to deprive investors of tangible assets, profit is evidence of a lack of intent.

C. The Government's Motion to Preclude Evidence or Arguments that Certain Investors Were Not Defrauded Should be Denied.

The Government next argues that evidence that some of the investors were not defrauded is "irrelevant" and "inadmissible"[10] reverse 404(b) evidence. Gov's MIL p. 9 – 11. FRE 404(b) precludes the use of prior bad acts to show propensity. Courts have also concluded that the same is true for "reverse 404(b)" evidence, i.e. that the Rule also limits the use of specific instances of good or innocent conduct for the purpose of proving innocence of charged acts.

Thus, the Government argues that evidence that Mr. Franzone did not defraud various investors is precluded under FRE 404(b) to show that he did not defraud the investors he is charged with defrauding. Gov's MIL p. 9 – 11.

A glaring flaw in this argument is that Mr. Franzone, per the Government's list of alleged victims, is charged with defrauding every single investor in the FF FUND based on those who were investors as of January 21, 2021. Exhibit A – 1/12/22 Email from Government (citing

---

[10] Gov's MIL p. 9.

Bankruptcy Case Doc. 248 at Ex. 2). See also Indictment ¶ 7 (charging defendant with defrauding all of the investors in the FF FUND).

Nor does the Government specify in their MIL which specific investors were allegedly defrauded versus which specific investors were not.

Evidence that Mr. Franzone did not defraud alleged victims is therefore not reverse 404(b) evidence, but rather admissible direct evidence that Mr. Franzone is not guilty of the charges against him (defrauding all of the investors in the FF FUND).

Even if it had constituted reverse 404(b) evidence, evidence that Mr. Franzone did not defraud the fund's investors would still be admissible.[11] "Evidence of past 'good acts' by a defendant is generally not probative unless a defendant is alleged to have 'always' … committed 'bad acts,' … **or where the evidence of 'good acts' would undermine the underlying theory of a criminal prosecution**," United States v. Damti, 109 Fed. Appx. 454, 455- 456 (2d Cir. 2004) (emphasis added) (citation omitted). In Damti, the preclusion of evidence of other "good acts" was not an abuse of discretion because there the Government had not "allege[d]… that 'all of the defendants' customers were defrauded, or that the defendants' business was 'permeated with fraud.'" Id.

Damti is distinguishable because the Government has alleged that all the investors in the FF FUND were defrauded. Exhibit A – Email from Government; see also Indictment.

---

[11] The Government suggests that only "a small number of investors" were not defrauded. Gov's MIL p. 11. While we do not yet have the Government's witness list, we are uncertain on why the Government thinks that Mr. Franzone would have defrauded all but a "small number of investors… given that one of those investments was ultimately profitable," Gov's MIL p. 11. ALL of the investors identified on the Government's list of alleged victims profited from the FF FUND, therefore Mr. Franzone maintains, as per Defendant's MIL, incorporated by reference herein, that NONE of the investors constitute "victims" in the case at bar, as a victim must have been harmed by a defendant.

Wherefore, the Government's motion to preclude evidence that some of the alleged victims were not defrauded should be denied.


II. Government's Second MIL and Government's I(D) MIL.

We group the Government's 1(D) and 2d MILs together for purposes of this Opposition as the issues are intertwined.

Essentially, they both boil down to the Government moving to preclude evidence that the Defendant made various disclaimers to investors and arguments regarding same. For example, the Government specifically seeks to preclude evidence of disclaimers in the FF FUND's Private Placement Memorandum ("PPM") regarding, *inter alia,* the risks inherent in an investment, the potential of loss, even of substantial losses, and that the General Partner (owned and managed by Mr. Franzone), could alter the investment strategies of the FF FUND without prior approval by the investors "if the General Partner determines that such change is in the best interest of the Partnership," Gov's MIL p. 13 (quoting the PPM).

The Government erroneously states that such evidence constitutes "blaming the victim," Gov's MIL p. 11 – 12, or evidence of a lack of justifiable reliance, Gov's MIL p. 13 – 14.

The Government misunderstands the relevance of disclaimers made to investors. Disclaimers do not go to blaming the victim or to show a lack of justifiable reliance. Rather, the disclaimers are admissible as evidence that Mr. Franzone did not intentionally defraud investors. According to the Second Circuit, "contractual disclaimers were relevant to the jury's determination of… guilt" in a fraud case, regardless of not rendering misrepresentations "immaterial as a matter of law," United States v. Weaver, 860 F.3d 90, 97 (2d Cir. 2017).

Last year, in <u>United States v. Guo</u>, 2024 U.S. Dist. LEXIS 80474; 2024 WL 1939221 (S.D.N.Y. May 2, 2024), the Hon. Analisa Torres denied the Government's motion to preclude the defense from arguing that "'disclaimers in transactional documents render the [D]efendants innocen[t]," ruling that "the jury must decide if there is a 'substantial likelihood' that the alleged misrepresentation 'would have been viewed by the reasonable investor as having significantly altered the total mix of information available.' … The transactional disclaimers are part of the 'total mix' of information for the jury to consider," <u>Guo</u>, 2024 U.S. Dist. LEXIS 80474 at *22 - *23 (citing <u>United States v. Landesman</u>, 17 F.4th 298, 341 [2d Cir. 2021]; <u>Weaver</u>, 860 F.3d at 97; <u>SEC v. Am. Growth Funding II, LLC</u>, 2019 U.S. Dist. LEXIS 67421; 2019 WL 1748186, at *5 [S.D.N.Y. Apr. 19, 2019]).

In another fraud case last year, the District of New Jersey likewise denied the Government's motion to preclude evidence and arguments concerning disclaimers in PPMs and other documents. <u>United States v. Salzano</u>, 2024 U.S. Dist. LEXIS 35677, *45 - 47; 2024 WL 866885 (DNJ Feb. 26, 2024).

Wherefore, because disclaimers *are* relevant to whether Mr. Franzone is guilty of the charged crimes, <u>Weaver</u>, 860 F.3d at 97; <u>Guo</u>, 2024 U.S. Dist. LEXIS 80474; 2024 WL 1939221, the Government's motions to preclude evidence of or argument regarding disclaimers, Gov's MILs I(D) and II, should be denied.

## III. Gov's Third MIL – Evidence of Defendant's "Substantial Personal Expenses."

The Government's general motion to admit evidence of the defendant's "personal expenses" or "personal spending" should be denied.

The Second Circuit permits evidence of "unexplained accumulation of… substantial wealth" or "expenditure of large sums of money" to be admitted ***in narcotics cases*** as proof that the unexplained wealth is the product of drug trafficking, rather than from legitimate income. United States v. Eng, 997 F.2d 987, 991 (2d Cir. 1993) (quoting United States v. 228 Acres of Land & Dwelling Located on Whites Hill Road in Chester, Vt., 916 F.2d 808, 813-14 [2d Cir. 1990]; United States v. Briscoe, 896 F.2d 1476, 1500 [7th Cir. 1990]; also citing United States v. St. Prix, 672 F.2d 1077, 1084 [2d Cir. 1982]).

United States v. Adelglass, 2024 U.S. App. LEXIS 31541; 2024 WL 5087519 (2d Cir. Dec. 12, 2024), which the Government cites in support of their motion, was a prosecution under 21 U.S.C. §§ 846; 841(b). The Second Circuit specifically quoted and followed Eng, 997 F.2d 987, 991, in Adelglass, 2024 U.S. App. LEXIS 31541, *6.

The Government has not given any reason to extend this rule from narcotics cases to fraud cases in general, let alone to this fraud case specifically. While the charges relate to Mr. Franzone's management of the FF FUND, managing an investment portfolio and being compensated for same is not, in and of itself, illegal.

Thus, any evidence of Mr. Franzone having "substantial wealth" or having spent "large sums of money" as a result of his gainful employment in managing the FF FUND does not indicate, as it might in a narcotics case, that the "'defendant had no legitimate source of cash,'" Eng, 997 F.2d 987, 991 (citation omitted). Nor are we clear on why it would be probative of a motive to commit fraud as opposed to Mr. Franzone's motive, as an investor in the FF FUND himself, to do his best to earn legitimate returns for the investors.

In any event, the Government's generalized motion to admit all evidence of "personal expenses" or "personal spending" is far too broad. For example, it would presumably permit the

Government to offer into evidence that he spent a year living at the Westin Beach Resort & Spa in Florida, despite evidence that the defendant's parents paid his hotel bills. Aff. of Defendant's Mother, ECF Doc. # 32-1 ¶ 3.

Obviously, evidence that Mr. Franzone's parents paid for him to reside at a "Beach Resort & Spa" has no probative value whatsoever, making it inadmissible under FRE 401. If it had had any probative value whatsoever, it would still be inadmissible under FRE 403 given the clear risks of unfair prejudice, wasting time, and confusing the issues.

Wherefore, in the absence of the Government identifying what specific spending or expenses the Government seeks to introduce and how specific expenditures are probative of Mr. Franzone's guilt or innocence in the case at bar, the Government's Third Motion *in Limine* should be denied.


## IV. The Government's Fourth MIL.

### A. The SEC Order.

The Government acknowledges that the defense can cross-examine witness Gregory Hersch regarding the facts underlying the SEC Order, Gov's MIL p. 19. However, the Government moves to preclude cross-examination on the SEC Order itself and the charges the SEC Order resolved, on the theory that the SEC Order is nothing more than a settlement and that "charges and settlement are irrelevant and highly prejudicial." Gov's MIL p. 18.

The Government has misapprehended the nature of the SEC Order, a copy of which is attached as Exhibit B. The SEC Order is <u>not</u>, as the Government represents, a mere memorialization of a settlement in which the respondents do not admit (or deny) any wrongdoing.

Rather, the document in question "is an Order of the SEC making findings based on facts discovered pursuant to its investigative authority. Such findings are presumed reliable and admissible," <u>SEC v. Pentagon Capital Mgmt. PLC</u>, 2010 U.S. Dist. LEXIS 25092, *12 - *13; 2010 WL 985205 (S.D.N.Y. March 2010) (citation omitted). "Public reports are presumed admissible in the first instance and the party opposing their introduction bears the burden… to persuade a court that a report should not be admitted," <u>Option Resource Group v. Chambers Dev. Co.</u>, 967 F. Supp. 846, 851 (W.D. Pa. 1996) (citation omitted).

That is, the findings of the SEC in the SEC Order are presumptively admissible under FRE 803(8), pursuant to which "A record or statement of a public office," in this case the SEC, is admissible if: "it sets out: … against the government in a criminal case, factual findings from a legally authorized investigation," (in this case, the SEC's investigation of Gregory Hersch and his advisory firm), and "the opponent does not show… a lack of trustworthiness." FRE 803(8)(A)(iii) and (B).

That Gregory Hersch and FCA did not admit or deny the SEC's findings of fact is irrelevant to the admissibility of the SEC's findings in the SEC Order. <u>Mazuma Holding Corp. v. Bethke</u>, 1 F. Supp. 3d 6, 17 (E.D.N.Y. 2014) (citing <u>Option Resource Group</u>, other citations omitted).

Wherefore, "the SEC's factual findings, including its opinions and conclusions, are admissible under Rule 803(8)," <u>Option Resources</u>, 967 F. Supp. 846, 851. "<u>Option Resources</u> continues to be cited with approval by courts in this Circuit," <u>Linde v. Arab Bank, PLC</u>, 97 F. Supp. 3d 287, 346 (E.D.N.Y. 2015) (citations omitted).

B. <u>Civil Litigations.</u>

<u>*(i) The Third Party Complaint of Zeiger, as Trustee of the Linden West Trust, v. Hersch.*</u>

The Government moves to preclude evidence of the pending Third Party Complaint of Zeiger, as Trustee of the Linden West Trust, against Gregory Hersch and others in 24 CV 1094 (JHR) (SDNY). Gov's MIL p. 20 – 21. The Government claims "the allegations… in that lawsuit are mere allegations that are irrelevant," Gov's MIL p. 21.

That pending lawsuit is premised on the SEC's findings of fact in the SEC Order. Indeed, the SEC Order is not only cited in, but also appended to the complaint. We have already discussed that the SEC's findings and conclusions are admissible under FRE 803(8)(A)(iii), notwithstanding that Gregory Hersch and FCA did not admit (or deny) wrongdoing. We have also established that the Government is not contesting the admissibility of the facts underlying the SEC Order. Gov's MIL p. 19.

As the facts underlying the lawsuit are the same as the findings of fact by the SEC, the fact that the lawsuit brought by the current trustee of the Linden West Trust is still pending does not make the underlying facts any less admissible.

<u>*(ii) The Settlement Between Gregory Hersch and Blake Mallen.*</u>

The Government refers to witness Gregory Hersch as an investor/alleged victim in the case at bar. Gov's MIL p. 17. Gregory Hersch was not on the Government's alleged list of victims. Bankruptcy Case Doc. # 248 at Ex. 2.

The reason he was not on the Government's list of alleged victims is that Gregory Hersch was not an investor in FF FUND. Rather, post-Indictment, on April 9, 2022, Gregory Hersch

acquired the interest of investor Blake Mallen in the FF FUND. Exhibit C – Transfer of Claim Other Than for Security.

The Government, in a footnote, seeks to preclude the defense from cross-examining Gregory Hersch into his acquisition of Blake Mallen's interest in the FF FUND, on the grounds that it was acquired as part of a settlement agreement with Blake Mallen. Gov's MIL fn. 5.

Blake Mallen's interest in the FF FUND included its interest in all FF FUND investments, including, as pertinent here, its interest in the CoreWeave investment.

Gregory Hersch was, at the time, on the Board of Directors of CoreWeave.[12] As such, Gregory Hersch would have known of concealed inside information regarding CoreWeave that Blake Mallen would have had no access to when agreeing to transfer their interest in CoreWeave to Gregory Hersch.

The Government intends to call Gregory Hersch to testify that he is an alleged victim[13] due to an interest in the FF FUND that he would not have but for his acquisition of that interest from Blake Mallen.

The defendant has a Sixth Amendment right to cross-examine Gregory Hersch concerning his benefiting from information he concealed from Blake Mallen in fraudulently inducing Blake Mallen to part with their interest in the FF FUND for less than their interest was worth (without getting into the existence of the settlement agreement or the other terms of the settlement agreement). "A district court should afford 'wide latitude to a defendant in a criminal case to cross-examine government witnesses,' … because the Confrontation Clause gives a defendant the right not only to cross-examination, but to effective cross-examination," <u>United</u>

---

[12] Exhibit D – Gregory Hersch's LinkedIn Profile, under Projects.
[13] Gov's MIL p. 17.

States v. Mallay, 712 F.3d 79, 103 (2d Cir. 2013) (quoting United States v. Cedeño, 644 F.3d 79, 82 [2d Cir. 2011] and citing United States v. Figueroa, 548 F.3d 222, 227 [2d Cir. 2008]).

Thus, the defendant has a Constitutional right to cross-examine Government witness Gregory Hersch on his having concealed information from Blake Mallen for his own personal gain as it goes directly to his credibility. Cf. Mendez v. Barr, 960 F.3d 80, 90 (2d Cir. 2020) (Sullivan, J. dissenting) (an "affirmative act of concealment 'involves dishonest or fraudulent activity'") (citation omitted); Hutensky v. FDIC, 82 F.3d 1234, 1241 (2d Cir. 1996) (bank directors' failure to disclose their controlling interest in partnerships that received loans from the bank showed "personal dishonesty").

Additionally, to the extent that the underlying facts of the litigation between Gregory Hersch and Blake Mallen overlaps with the SEC's findings in the SEC Order, or involved other fraudulent conduct on the part of Gregory Hersch, the defendant should also be permitted to cross-examine Gregory Hersch regarding the underlying facts, without going into the civil action itself or the arbitration. In addition to Mr. Franzone's right to effective cross-examination of the Government's witnesses under the Confrontation Clause, FRE 608(b)(1) permits cross-examination of specific instances of a witness's conduct "if they are probative of the character for truthfulness or untruthfulness of: (1) the witness," FRE 608(b)(1).

Wherefore, although we agree that there are certain limits to the scope of cross-examination, Gregory Hersch should not be able to escape cross-examination on instances that are probative of his character for truthfulness or untruthfulness simply because said instances were the subject of former and ongoing litigation, or committed in the course of resolving same.

### C. Cross-Examination Concerning Drug Use Is Permissible.

Cross-examination of witnesses concerning their drug use is permissible "to inquire as to whether a witness's capacity to observe and remember is impaired by drug use," Dobson v. Walker, 150 Fed. Appx. 49, 52 (2d Cir. 2005) (citing United States v. DiPaolo, 804 F.2d 225, 229-230 [2d Cir. 1986]). See also Alvia v. City of Waterbury, 2019 U.S. Dist. LEXIS 43550; 2019 WL 5020736 (D. Conn. March 18, 2019) (quoting DiPaolo).

Thus, cross-examination on drug use is permissible for the purpose of enabling the jury "to consider [his] use of drugs in evaluating [his] ability to recount the critical events as they unfolded," and the witness's "ability to perceive the underlying events and testify lucidly at trial," Alvia, 2019 U.S. Dist. LEXIS 43550, *2 (citations omitted).

Wherefore, the Government's MIL to preclude all cross-examination on their witnesses' use of drugs should be denied.

### V. The Government's Fifth MIL.

### A. Background Information.

The Government moves to preclude any "evidence or argument concerning [Mr. Franzone's] family background, health, age, or any other similar factors," as irrelevant, but citing cases in which particular evidence was excluded on FRE 403 grounds. Gov's MIL p. 22. For example, the Government relies on United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) where the probative value of the defendant's son's cerebral palsy was substantially outweighed by unfair prejudice.

The Government has not identified how any particular background information in the case at bar would be unfairly prejudicial to the Government. In the absence of such a showing,

the Government's general motion to exclude any and all evidence of or reference to the defendant's "personal circumstances" should be denied. "The Advisory Committees notes on Rule 401 are illuminating. These notes state that 'evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.' See McCormick on Evidence § 184, at 541... 'During the course of a trial, it is customary for the defendant to introduce evidence concerning his background, such as information about his education and employment. Such evidence is routinely admitted without objection,'" United States v. Blackwell, 853 F.2d 86, 88 (2d Cir. 1988) (citation omitted).

### B. Sympathy Pitch.

Finally, the Government moves to not only exclude evidence of potential punishment faced by the defendant but also to preclude arguments such as Mr. Franzone's "'life is in their hands,' that a defendant's 'liberty is at stake,' that the defendant 'does not deserve to go to prison,' and in other similar formulations," Gov's MIL p. 22.

The Government does not cite any actual authority for precluding such arguments and, to the best of our knowledge, no such authority exists. The defense is permitted to make what has been referred to as a "sympathy pitch," during arguments. Such arguments are hardly tantamount to introducing applicable statutory or advisory sentencing ranges. The choice to implore the jury that a defendant deserves mercy is a strategic decision which is not without drawbacks as it permits the prosecutor to make a rebuttal argument such as justice would entail punishing the defendant. United States v. Solomon-Eaton, 627 Fed. Appx. 47, 49 (2d Cir. 2016).

Wherefore, to the extent that the Government seeks to preclude the defendant from making a so-called "sympathy pitch" to the jury, the motion should be denied.

VI. Cross-Motion to Strike.

On February 21, 2025, the Government sent an email to defense counsel, proposing, *inter alia,* that the parties submit motions *in limine* by Monday, March 10, 2025 and oppositions thereto by Monday March 25, 2025. 2/21/25 Email from Government (attached).

The parties followed this up with a remote meet and confer on Monday, February 24, 2025, during which defense counsel agreed to same. Invite for 2/24/25 Meet and Confer. During the conversation, the Government additionally advised defense counsel, in response to a question from the defense, that Rule 16 discovery was already complete. (A representation that has since proved to be false, as the Government produced over 1,600 additional batestamps' worth of discovery approximately ten minutes before filing their untimely motion. In compressed format, the additional discovery—produced one month before of trial—is 3.27 GB. For perspective, each gigabyte is the equivalent of "thousands of text documents, hundreds of photos, or a few hours of high-quality video."[14])

Subsequent to the meet and confer, the Government wrote a letter on behalf of the parties, proposing, *inter alia,* that the parties submit their motions *in limine* on Monday, March 10, and that the parties submit any oppositions thereto on Monday, March 17, 2025.

The Court so-ordered the proposed deadlines on February 25, 2025. Order, ECF # 157.

In accordance with the so-ordered deadlines, the parties filed motions *in limine* on Monday, March 10, 2025, including an extensive 23 page memorandum of law filed by the Government. ECF # 161.

---

[14] *What is a Gigabyte (GB) & How Much Data Does it Hold?*, Lenovo.com, Available at: https://www.lenovo.com/us/en/glossary/gigabyte/?orgRef=https%253A%252F%252Fwww.google.com%252F (visited on March 14, 2025).

Days after this deadline, at 5:14 p.m. on the Friday before oppositions to *in limine* motions are due, the Government filed a "Supplemental Motion *in Limine*," ECF Doc. # 162, moving for the admission of previously unnoticed FRE 404(b) evidence. (Though, we note the Government apparently accidentally used the request for relief in their conclusion from their draft in progress of the Government's opposition to defendant's motion *in limine*, concluding not with a request to admit the proffered evidence, but with a request to deny defendant's motions. Supp. Motion p. 6. We take this as an indication that the Government is already well aware of the untimeliness of their Supplemental Motion and, in their haste to avoid it being any further untimely, did not proofread their work.)

The Court may order the extension of a previously ordered deadline "on its own… or for good cause… on a party's motion… after the time expires **if the party failed to act because of excusable neglect**," Fed. R. Crim. Pro. 45(b)(1)(B) (emphasis added). <u>See also</u> Fed. R. Crim. Pro. 12(c)(3) (concerning untimely pretrial motions).

The Government has not demonstrated good cause or excusable neglect for their untimely motion. The Government simply includes a footnote explaining that the Government brought its Supplemental Motion after interviewing a particular Government witness for the first time on March 13, 2025. Supp. MIL fn. 1.

As of next month, this case will have been pending for **four years.** The Government's failure to interview one of their witnesses for four years does <u>not</u> constitute excusable neglect.

Additionally, pursuant to FRE 404(b)(3)(A), the prosecutor has an obligation to "provide reasonable notice of any such [FRE 404(b)] evidence that the prosecutor intends to offer at trial," FRE 404(b)(3)(A).

It is not "reasonable notice" to proffer FRE 404(b) evidence to the defendant in an untimely motion *in limine* filed after business hours on the Friday before the Monday deadline for defendant to respond to the Government's *in limine* motions.

Wherefore, as the Government has not complied with Fed. R. Crim. Pro. 45(b)(1)(B) or with FRE 404(b)(3)(A), the defendant moves to strike the Government's Supplemental Motion *in Limine* as untimely. Defendant further notes that it is not equitable to give defendant less time to respond to this untimely motion than the Government has had to respond to defendant's motions. Nor is it equitable for the Government to provide required FRE 404(b) notice through an untimely Government motion filed *after* defendant's deadline for filing motions *in limine* has already elapsed.

Wherefore, the defendant respectfully moves to strike the Supplemental Motion in its entirety. However, in the event that the Court denies the motion to strike, the Court should at least give the defendant an additional 7 days to address the merits of the Government's untimely motion and an opportunity for the defendant to file his own supplemental motion *in limine* regarding the Government's belated disclosures.

## CONCLUSION

WHEREFORE, Defendant Andrew Franzone respectfully requests:

1. That the Court deny the Government's timely motions as discussed above,

2. That the Court strike the Government's Supplemental Motion as untimely or, barring that, give defendant an additional 7 days to address the merits of same, as well as an opportunity for defendant to file his own supplemental motion *in limine* given the Government's 11th hour disclosures, and

3. For such other relief as the Court may deem just and proper.


Dated: New York, New York                                   Respectfully submitted,
      March 17, 2025


                                                     */s/ Joseph R. Corozzo*
                                                     Joseph R. Corozzo, Esq.
                                                     Angela D. Lipsman, Esq.
                                                     Rubinstein & Corozzo, LLP
                                                     *Attorneys for Defendant*
                                                   *Andrew Franzone*
                                                   260 Madison Avenue, 22d Fl.
                                                   New York, New York 10016
                                                   (212) 545-8777 (ph)
                                                   (917) 722-8206 (fax)
                                                   jcorozzo@rubcorlaw.com
                                                   alipsman@rubcorlaw.com

cc:     A.U.S.A.s Marguerite Colson,
         Maggie Lynaugh, Sarah Mortazavi (via ECF)