UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ANDREW FRANZONE

Defendant.

21-CR-446 (VSB)

**ORDER**

VERNON S. BRODERICK, United States District Judge:

I am in receipt of the Government's sentencing submission, (Doc. 197 ("Gov't Sub.")), and the Defendant's response, requesting a *Fatico* hearing, (Doc. 203 ("Def. Resp.")). I am also in receipt of the Defense's initial sentencing memorandum. (Doc. 192 ("Def. Sub.").) Although I do not find that the Defendant's objections warrant witness testimony, I will schedule oral argument on September 17, 2026 at 11:00 a.m. ET in advance of sentencing on six issues:

## I. Amount of Value of Securities at Time Offense Was Uncovered

The Government argues in its sentencing submission that "loss may be computed as the amount of principal the limited partners invested in the Fund, less any return," meaning the amounts withdrawn by investors from the fund. (Gov't Sub. 10 ("[I]nvestors had deposited into the Fund a total of approximately $58 million and withdrawn approximately $24 million, for a net deposit of approximately $34 million in principal.").) However, "[a] fraud may involve the misrepresentation of the value of an item that does have some value (in contrast to an item that is worthless)." *United States v. Leonard*, 529 F.3d 83, 92 (2d Cir. 2008) (internal quotation marks omitted). Therefore, the loss amount is not "equal to the entire cost of the securities sold by the appellants," but rather that sum less "the actual value of the instruments." *Id.* at 93.

Nonetheless, when "defendant's victims were left with nothing of value when the fraud was uncovered," no offset for the value of the securities is necessary. *United States v. Byors*, 586 F.3d 222, 226 (2d Cir. 2009)

The Defense is incorrect to assert that "the Court should find that the loss amount is zero," (Def. Resp. 33), because "investors recouped a greater than 30,000% return on the Fund's investment in CoreWeave during the bankruptcy proceeding," (*id.* at 25). The Sentencing Guidelines state clearly that loss amounts shall be offset not by amount recouped through bankruptcy proceedings after the offense was uncovered, but rather by "money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." U.S.S.G. § 2B1.1 cmt. 3(D)(i).

I do not believe that witness testimony is necessary on the issue of what, if any, value, inured to the securities purchased by Franzone at the time the offense was detected. Indeed, "[t]he procedure followed in resolving disputed factors at sentencing rests in the sound discretion of the trial court," and I am "under no duty to conduct a full-blown evidentiary hearing every time a defendant contests a fact in a presentence report." *United States v. Ibanez*, 924 F.2d 427, 430 (2d Cir. 1991) (internal quotation marks omitted); *see also United States v. Khan*, 920 F.2d 1100, 1102 (2d Cir. 1990) ("This is not the sort of situation where all a defendant need do is knock on the hearing room door, and it will automatically open to him."). However, the parties should be prepared to present oral argument at the hearing on September 17, 2026 concerning the issue of the value of the securities/investments at the time the offense was uncovered, with the caveat that "funds received in bankruptcy after the conspiracy was uncovered, or [] the potential value of a future bankruptcy payout," will not be considered valid offsets for the purpose of

calculating loss. *United States v. Bryson*, 101 F. Supp. 3d 147, 157 (D. Conn. 2015) (emphasis omitted). I intend to ask the following questions at the proceeding on September 17, 2026, among others:

- Is the loss amount based on the actual loss amount or the intended loss amount?
- Is the Government's loss amount calculation based on the amount invested by the victims that they would not have invested but for the misrepresentations by the Defendant?
  - If so, what basis is there to distinguish such an approach from that which the Second Circuit reversed in *Leonard*? 529 F.3d at 93 ("The district court computed the loss amount as equal to the entire cost of the securities sold by the appellants, on the ground that the members would not have invested had they realized the true size of the sales commission.").
- Does the Government's loss amount of $34 million take into account the value of the securities/investments at the time the offense was uncovered?
  - At what time does the Defense believe the loss amount should be calculated?
  - Can the Defense point to any case law that supports determining the loss amount at some point after the fraud is discovered?
- Is there any evidence in the record that the securities/investments had some value at the time the offense was uncovered?
- How much were the securities/investments worth at the time that the offense was uncovered?
- Is the Linden West Trust a victim of Defendant's fraud?
  - What was the actual loss incurred by Linden West Trust?
  - How much were the securities/investments purchased by Linden West Trust worth at the time that the offense was uncovered?
  - Was Linden West Trust entitled to give notice of redemption under the agreements in place?
- The initial defense submission references a 2010 audit. (Def. Sub. 6 n. 11.)
  - Who prepared the 2010 audit?
  - What time frame did the 2010 audit cover?
  - Of what relevance is the 2010 audit since the fraud was committed between 2014 and September 2019?
- The initial defense submission references the Government's plea offer in December 2024. (Def. Sub. 9.)
  - Can I legally consider the plea offer?
  - When did Defendant reject that plea offer?
  - Had there been other plea offers at the time of the December 2024 plea offer?
  - Why is the plea offer relevant to sentencing here, where Defendant has pled guilty without a plea agreement?
- The initial defense submission argues that there exist "former investors who, due to superseding intervening causes, are not able to realize the profits from the

Fund." (Def. Sub. 13.)

- What does "superseding intervening causes" mean as a legal matter?
    - What was being superseded?
    - Does the Defense claim that some losses are not cognizable because they were not caused by the Defendant? If so, what are those losses and what is the legal basis for excluding them?
- Who were the investors in the Linden West Trust?
- Why are the actions of Investor-1 relevant to Defendant's sentencing?
- The Defense argues that "malfeasance by third parties is a clear superseding cause that breaks the chain of causation. In the end, Mr. Franzone did not hurt any investors; Investor-1 and his son did." (Def. Sub. 5.)
    - What chain of causation is the Defense referring to?
    - When did Defendant's fraud end?
- Even accepting *arguendo* the Defense's argument, was it Defendant's fraud that allowed the alleged "malfeasance by third parties" to occur?

## II. Number of Victims

I also do not believe that a separate evidentiary hearing is necessary on the issue of whether the Government has shown that Franzone's crime resulted in ten or more victims. The Guidelines recommend a two-level enhancement if the offense "involved 10 or more victims" or "resulted in substantial financial hardship to one or more victims." U.S.S.G. § 2B1.1(b)(2)(A). The Second Circuit has made clear that "individuals who have been fully reimbursed for their financial losses may be deemed victims for purposes of the sentencing enhancement set forth at U.S.S.G. § 2B1.1(b)(2)." *United States v. Abiodun*, 536 F.3d 162, 168 (2d Cir. 2008). Individuals who "suffered an adverse effect as a practical matter from the defendant's conduct," are still considered victims under the guidelines. *Id.* (alterations adopted and internal quotation marks omitted). The Government argues in their memorandum that Franzone's "Fund had over 100 investors, Franzone has submitted letters from approximately 30 of them stating that they do not view themselves as victims; excluding those individuals from the count, that leaves more than 70 victims of Franzone's fraud." (Mem. 13.) Based on this formulation, it appears that there would be significantly more than ten victims of the fraud remaining regardless of the

credibility of the witness, G.H., that the Defendant claims that the Government improperly relied upon and whom Franzone seeks to impeach via cross-examination. (*But see* Def. Resp. 12–20.) I intend to ask the following questions at the proceeding on September 17, 2026, among others:

- Is whether or not an individual views itself as a victim dispositive as to whether they can be considered a victim under § 2B1.1(b)(2)(A)?
- Of the seventy remaining victims how many have submitted victim impact statements?
- The Defense claims in its initial submission that "the Government's position that there were at least 10 victims who suffered an actual loss appears to be inconsistent with their calculation of loss, which they have based entirely on alleged actual loss to a single investor-victim—the Linden West Trust." (Def. Sub. 25.) However, in the Government's submission it states that "the Government's loss calculation is not based solely on the losses of one particular investor." (Gov't Sub. 10 n. 6.)
    - Does the Defense presently dispute the Government's representation that the Government's loss calculation is not based solely on the losses of one particular investor?
- Is the Government relying on the statement of G.H. in order to reach the conclusion that there were more than ten victims of the fund or is there an independent basis for concluding that there were more than ten victims?

## III. <u>Substantial Hardship</u>

Section 2B1.1(b)(2)(A) delineates a conjunctive test wherein a two-level enhancement is applied if the offense "involved 10 or more victims" or "resulted in substantial financial hardship to one or more victims." U.S.S.G. § 2B1.1(b)(2)(A). The Government singles out one of the victims, the author of Government Exhibit H-1, as an individual who suffered substantial hardship because Franzone "weaponized [he]r trust, friendship, and loyalty for his own gain, using [he]r care for him as the very tool to exploit [her]," further claiming that her victimization by Franzone "has been one of the most stressful and heartbreaking experiences of [her] life." (Doc. 197-8.) Franzone argues in response that this victim's claim does not suffice "to prove that Mr. Franzone personally caused a substantial financial hardship," but does not explain why determining whether this victim has demonstrated substantial hardship on the basis of the

submissions and oral argument alone would be unfair or deny him the process he is due. *See United States v. Kinney*, 684 F. App'x 73, 76 (2d Cir. 2017) (summary order) (denying appeal of denial of an evidentiary hearing because the court provided the Defendant with an "adequate opportunity to present his position."). Defendant is free to present oral argument regarding why he believes that substantial hardship is not supported by the record, but cross-examination is not necessary in order for me to rule on this matter. I intend to ask the following questions at the proceeding on September 17, 2026, among others:

- Is the author of Government Exhibit H-1 the only victim that the Government asserts suffered substantial hardship?
- Is the substantial hardship only predicated on the fact that this victim's husband had to postpone his retirement as a result of the Defendant's criminal activity?
- To what extent is the substantial hardship predicated on the federal agent's proffer notes from a proffer session attached to the Government's submission as Exhibit U?
- Is there any indication in the record that the author of Government Exhibit H-1 subscribed to those characterizations?
- The Defense argues in its initial submission that "the Government's revised position is inconsistent with the Government's *Pimentel* Letter, which the Government prepared on the afternoon of the plea in April, days before trial was set to commence, and therefore after the Government had already prepared for trial, and which did not allege that any victims had suffered substantial financial hardship." (Def. Sub. 27.)
  - Why is the *Pimentel* letter relevant to Defendant's sentencing?
  - The *Pimentel* letter is not binding on me, correct?
- Defendant acknowledged during his guilty plea that he understood that the *Pimentel* provides that nothing in the letter limits the right of the Government: (1) to change its position at any time as to the appropriate guidelines calculation in the case, even if that change is based, in whole or in part, on information that was in the Government's possession as of the date of the letter; and/or (2) to present to me or the United States Probation Office, either orally or in writing, any and all facts and arguments relevant to sentencing that are available to the Government at the time of sentencing.
  - In light of this acknowledgment isn't the Defendant's reference to the *Pimentel* letter irrelevant?

## IV. <u>Sophisticated Means</u>

A two-level enhancement is warranted if the offense "involved sophisticated means." U.S.S.G. § 2B1.1(b)(10). Franzone proffers no legal basis why I cannot adjudicate the

appropriateness of a sophisticated means enhancement on the basis of the written submissions and oral arguments presented on September 17, 2026 and at sentencing without the need for the cross-examination of witnesses. Instead, Defendant merely states that "if the Government fails to prove the other disputed enhancements at the *Fatico* hearing, and if the sophisticated means enhancement would not affect the sentence to be imposed by the Court, then it may prove unnecessary to extend the scope of the *Fatico* hearing to whether sophisticated means were used." (Def. Resp. 37.) I intend to ask the following questions at the proceeding on September 17, 2026, among others:

- What cases support the proposition that the sophisticated means enhancement may be imposed on the basis of the use of a complex and interlocking corporate structure to carry out a financial crime?
- Does the defense contend that the Government's description of structure of the fund, including the bank accounts it used, (*see* Gov't Sub. 14–15), is inaccurate?
- What would be the most straightforward corporate structure that could still constitute a "complex" corporate structure for the purposes of this enhancement?
- With regard to the performance reports, could the Government provide to me the specific documents and/or excerpts of those documents that provide support for this enhancement?

## V. Acceptance of Responsibility

The Government argues that Franzone is not entitled to a reduction for acceptance of responsibility because he "attempts to deflect responsibility, and engages in victim-blaming." (Gov't Sub. 15.) In his opposition, Franzone argues that his "disputing the enhancements and underlying allegations in the PSR constitutes good faith, zealous advocacy, not a denial of his responsibility for his crimes." (Def. Resp. 7-8 (emphasis in original).) I intend to ask the following questions at the proceeding on September 17, 2026, among others:

- If I find that some or all of Franzone's arguments related to the enhancements are legally baseless, does the law permit me to decline to grant him a reduction for acceptance of responsibility?
- Can I deny Franzone a reduction for acceptance of responsibility if I find that some of the arguments made related to the enhancements amount to victim blaming?

- Can I deny Franzone a reduction for acceptance of responsibility based upon the timing of his guilty plea?

## VI. <u>Forfeiture</u>

The Government argues that I should impose a forfeiture amount of totaling $46,643,293.18, which it claims is a "'reasonable estimate' of the proceeds of Franzone's crime, predicated on the value of all funds invested in FF Fund (that is, deposited with the Fund), but conservatively excluding money invested by those who submitted letters on Franzone's behalf." (Gov't Sub. 18.) Franzone claims in response that the Government has failed to "prov[e] that the proceeds from Mr. Franzone's fraud total over $ 46.6 million." (Def. Resp. 37.) I intend to ask the following questions at the proceeding on September 17, 2026, among others:

- Is the money that Franzone took as fees/compensation subject to forfeiture?
- How did Franzone finance his racing team?
- What fees/compensation did Franzone receive during the conspiracy?

Accordingly, I conclude that a *Fatico* hearing with witness testimony is not necessary. On September 17, 2026, the parties should be prepared to answer the above questions, and to present oral argument on the applicability of sentencing enhancements for loss amount, number of victims or substantial hardship, and sophisticated means. The parties should also be prepared to present oral argument concerning acceptance of responsibility and forfeiture.

SO ORDERED.

Dated: September 4, 2026
New York, New York

Vernon Broderick

Vernon S. Broderick
United States District Judge